MARIE E. HILD, APPELLANT, v. GEORGE M. HILD, APPELLEE.
284 N. W. 730

FILED MARCH 10, 1939.   No. 30540.

*William R. Patrick*, for appellant.

*Johnsen, Gross & Crawford, contra.*

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER and MESSMORE, JJ.

MESSMORE, J.

Plaintiff brought an action for separate maintenance, charging defendant with extreme cruelty. Defendant denied the allegation of cruelty and, by cross-petition, charged the plaintiff with extreme cruelty. The reply was a general denial.

The defendant, a man 62 years of age, previously married and divorced and the father of grown daughters, and the plaintiff, a woman 54 years of age, twice previously married and once divorced, and the mother of a grown daughter, were married April 7, 1937. At the time, plaintiff was a widow living in Oklahoma City, operating a boarding and rooming house, and met the defendant through her sister, a resident of Omaha. The defendant went to Oklahoma City, proposed marriage to plaintiff, and they were married

in Papallion, Nebraska, and went to Omaha, where they lived in a three-room apartment. The evidence is in sharp conflict and a detailed statement thereof would unnecessarily lengthen this opinion. We will, therefore, state the substance of the claims of the respective parties.

The evidence of plaintiff and her witnesses, her daughter, brother-in-law, sister and mother, shows excessive drinking of beer and whisky by defendant and drunkenness two or three times weekly; that he always had a case of beer and some whisky in the home; that his conduct was intolerable, his personal habits vile; he was unclean about his person and in his bed failed to properly attend to the wants of nature; that previous to his marriage he had lived in his own home in Plattsmouth, Nebraska, having a housekeeper to care for it. Two letters appear in the record showing rather close and intimate relations between the housekeeper and the defendant. Plaintiff received one letter and had full knowledge of another to her husband. Plaintiff states that the letters caused her much anxiety concerning the previous moral conduct of her husband and lessened her trust in him; that his attitude changed immediately after receipt and discussion of the letters; that he would leave the apartment and remain away all day, was difficult to get along with, and stated: "Well there is going to be a hell of a change before we get along." Plaintiff testified that defendant wanted to purchase a saloon in South Omaha and have her assist him in the business and live over the saloon, which she refused to do.

Defendant and witnesses in his behalf testified in substance: Plaintiff told defendant that she wanted a divorce, that she could not live with him and did not want to ruin her life or his, which he claims affected him mentally and physically. Very shortly after the marriage the plaintiff, in playing cards with some neighbors, and on many other occasions, stated that she did not intend to live with the defendant, and that when all of her debts were paid she intended to leave. Plaintiff did not bring her furniture to Omaha; most of it had been stored, except what she sold,

receiving therefor about $75, and she stated that she was able to start operation of her boarding and rooming house any time. She sought the services of a schoolteacher, with whom she had played cards and gone riding, to follow her husband, the teacher refusing. She advertised for, but did not employ, a detective for such purpose. She complained that defendant failed to provide for her adequate and proper food, when, in fact, she had been furnished ample food and milk, according to defendant's witnesses. All of the evidence of each party is vigorously denied by the other.

The trial court granted a decree of divorce to the defendant upon his cross-petition, finding that plaintiff should pay her own witness fees, and that the defendant should pay the costs and an attorney's fee fixed at $100. Plaintiff appealed.

Nebraska cases hold generally that the trial court is vested with sound discretion in determining whether a divorce from bed and board or an absolute divorce shall be granted, and in a majority of the cases an absolute divorce is to be preferred, depending upon the facts and circumstances of each case. See *Phillips v. Phillips, ante,* p. 313, 281 N. W. 22; *Sutherland v. Sutherland,* 132 Neb. 558, 272 N. W. 549; *McKnight v. McKnight,* 5 Neb. (Unof.) 260, 98 N. W. 62.

The instant case is one of that class of cases in which an opportunity to both hear and see the witnesses as they testify places the trial court in a much better position to know the weight and credibility that should be given to the testimony than a reviewing court can possibly be from reading a transcript thereof. This court tries this case *de novo,* and yet we have said that, where the testimony of witnesses upon the vital questions involved is conflicting, this court will consider the fact that an experienced trial judge observed the witnesses and their manner of testifying and accepted one version of the facts rather than the other. In the instant case, we think the trial court had a very definite advantage over the members of this court by observing the

witnesses and their manner of testifying and determining the truthfulness or untruthfulness of the stories as told by them. See *Clough v. Clough,* 132 Neb. 748, 273 N. W. 31; *Sutherland v. Sutherland, supra.*

Plaintiff further testified that at the time defendant proposed marriage to her he represented that each would dispose of his or her property, and that he would build her a home in Omaha, Denver, or California. There is some evidence that he represented to her that he had considerably more property than he actually owned. For instance, it is contended that he had owned a farm which he had sold for $15,000 to $17,000, and that he had told the plaintiff he had $5,000 in bonds. He did own 160 acres of farm land in Cass county, with a 15,000-dollar mortgage upon it, which farm he sold to his brother 12 years previously, and what he actually received for his equity, if any, is rather vague. The evidence discloses that his property consisted of a note for $330, given by the husband of plaintiff's cousin, which is apparently uncollectible; a note for $2,200, given in 1912 by his brother-in-law and sister, on which no interest had been paid for seven or eight years; $500 in the Murray State Bank; $100 in a South Omaha bank, and a 1936 Dodge coupé; also 80 acres of unimproved land in Perkins county, and he was indebted to one Ed Cecetka in the sum of $600.

The defendant's home in Plattsmouth was sold in November, 1936, a trifle over a year prior to his marriage to the plaintiff, to defendant's brother for $4,500, the brother at intervals paying $2,000 cash and giving a 2,500-dollar mortgage. There was a defect in the title, which had to be corrected before the defendant could give good and sufficient title. The 2,500-dollar mortgage was made in the name of both plaintiff and defendant. Plaintiff's testimony in this respect follows: "Q. What were the circumstances of that mortgage being made to both you and Mr. Hild? A. Well there was a delay in fixing the title. It wasn't just right or something and it was delayed. It took quite a little time to make out the papers. I asked him to have

it made in our names. My name as well as his." On cross-examination she testified: "Q. And before you would sign the deed for the transfer of the property, you had the mortgage made out to you, didn't you? A. To both of us, yes." The trial court quieted title of this mortgage in the defendant, and plaintiff's contention is that the court, by so doing, deprived her of her own property, and she bases this contention further upon the proposition that before the marriage defendant agreed to sell the property and build a home for both of them in Omaha, Denver, or California. However, there is also evidence that both of them were to sell their residences for such purpose. He had sold his property previously; she had not sold hers. While plaintiff does not state that she relies upon an interest in the mortgage as a gift from defendant, she indicates, however, such contention by her brief filed herein.

One of the essential elements of a gift is the intention to make it. A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential element of the gift, and this contention must be inconsistent with any other theory. As previously stated, in the instant case the defendant had disposed of his real estate in Plattsmouth prior to his marriage to plaintiff. She requested the 2,500-dollar mortgage to be made out to both of them before she would sign the deed conveying the title. The evidence does not disclose that the defendant intended to make a gift of an interest in this mortgage to the plaintiff.

The trial court analyzed this evidence and concluded that the property was property in common, to be considered in determining the property rights of the parties, and concluded that the evidence did not show that defendant intended to part with this property so that plaintiff might acquire a half interest therein. The trial court was within its rights in treating the mortgage as common property. While the theory of a gift has been presented and counsel has assumed that the transfer of the legal title might be sufficient to effectuate a gift, still the person asserting it must prove all the essential elements by clear, direct, posi-

tive, express and unambiguous evidence. The evidence of the plaintiff fails in this respect.

The property of the plaintiff, at the time of the marriage, consisted of a half interest in a rooming house in Oklahoma City, value $3,500, paying her $20 a month, half of the rent, as her interest while she lived with defendant; her household furnishings, most of which are in Oklahoma City, and 160 acres of land in Kansas, from which she has received very little, if any, revenue. This marriage lasted for 11 months, and it was consummated between two people, past middle age, both with previous marital experience. Both had raised families, each owning about the same amount of property as the other. It is obvious that they could not live together as man and wife; in fact, the plaintiff was desirous of obtaining a divorce, and the record contains many statements by her to that effect. Defendant's property was accumulated by him before this marriage, and there was no joint effort by plaintiff and defendant in accumulating property. His income is primarily derived from interest that he might receive from the 2,500-dollar mortgage. He is not regularly employed.

In determining the question of alimony or division of property as between the parties, the court, in exercising its sound discretion, will consider the respective ages of the parties to the marriage, their earning ability, the duration of, and the conduct of each during, the marriage, their station in life, the circumstances and necessities of each, as well as their health and physical condition, and whether the property was accumulated before or after the marriage, and from all of such elements the court, in allowing or refusing to allow permanent alimony, will determine the rights of the respective parties and all other matters pertaining to the case. See *Swolec v. Swolec*, 122 Neb. 837, 241 N. W. 771.

Defendant is to pay all costs necessitated by this appeal. For the reasons given herein, the judgment and decree of the district court are

AFFIRMED.