IN RE ESTATE OF CLARA STERNECKER.
LILLIAN RABOURN, APPELLEE, V. CHARLES STERNECKER, ADMINISTRATOR: CLARA M. STERNECKER, APPELLANT.
287 N. W. 659

FILED SEPTEMBER 29, 1939. No. 30666.

*Davis & Vogeltanz* and *R. A. Haggart,* for appellant.

*T. T. Bell, W. A. Prince* and *Frank E. Landis, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

SIMMONS, C. J.

This is an action brought to determine the ownership of certain shares of building and loan stock. Clara Sternecker died intestate in January, 1937. Probate proceedings were had in her estate, and her son, Charles, was appointed administrator. He filed his final report and petition for distribution, showing, among other things, that the heirs at law were Charles Sternecker (the administrator) and Joseph Sternecker, sons of the deceased, and Lillian Leth Rabourn, a granddaughter of the deceased, each of whom inherited an undivided one-third interest in the property of the deceased.

Lillian Rabourn, hereinafter referred to as the plaintiff, filed objections to the final report, alleging that the administrator had not reported, nor accounted for, certain building and loan stock belonging to the deceased. To that objection, the administrator answered that the deceased was not the owner of any building and loan stock at the time of her death; that all of the stock in which deceased was interested "was by her direction issued to her and various other persons, or the survivor of them;" that said stock became the property of the survivors, and "that said transactions were made at various times over a period of about ten years, the exact dates of each transaction, *and all other details of which are not known to your administrator."* (Italics ours.)

The administrator subsequently amended his answer and alleged that when he filed his original answer he did not have complete information regarding the stock; that he had since made an investigation and found that two certificates of stock, totaling $1,400, in a Lincoln company, were issued to "Clara Sternecker, Clara M. Sternecker, or survivor," that eleven certificates in an Ord company, totaling $3,750,

were issued to "Mrs. Clara Sternecker, Clara M. Sternecker, either one or the survivor," and that one certificate for $500 in the Ord company was issued to "Mrs. Clara Sternecker, Chas. Sternecker, either of them or the survivor." This last certificate was issued in 1923, the two Lincoln company certificates were dated in 1927 and 1929, and the remainder of the certificates were issued between September, 1930, and January 1, 1933. He further stated that certain certificates were issued to the deceased and her son, Joseph, or the survivor, "the details of which are not known to your administrator."

The plaintiff then filed additional objections charging that for 35 years Charles was in full charge of his mother's business; that beginning in July, 1935, he was her legal guardian; that it was the intent of the deceased that said stock should pass to the three heirs in equal shares; that Charles took advantage of his control over his mother's property, her age and mental condition; disregarded his mother's wishes and directions and fraudulently had the stock issued and carried in the name of Clara M. Sternecker, the daughter of Charles; that all of the money invested in said stock was the money of deceased; that after his mother's death Charles delivered the stock to the others named in the certificates and that the certificates are assets of the estate and should be accounted for as such.

Clara M. Sternecker was made a party, and, in a joint answer with her father, denied the allegations of the objections except such as had been admitted in the answer of Charles.

The issues as made were tried to the county court, and a decree entered finding that the stock belonged to the estate. The matter was appealed, tried to the district court, and the decree of the county court was affirmed. Clara M. Sternecker appeals to this court.

The record discloses that the deceased's husband died many years ago, that the deceased inherited a life estate in the home farm, and raised her family there. Charles remained at home for some years after the others moved away,

and generally worked for his mother and aided her in her business. He appears to have been her trusted son and agent throughout all the later years of her life.

Some fifteen years before her death, the deceased rented the farm, moved to Elba, and purchased a home. This home was subsequently deeded to Charles, although the deed was not placed of record until after he became the guardian of his mother in 1935. Up until her guardianship, the deceased collected the rents from the farm and accumulated considerable money. The mortgage on the farm was paid off. She loaned some money to people which was not repaid. With minor exceptions, the balance of her moneys was ultimately invested in the building and loan stock now in controversy.

Parts of the testimony of Charles and Clara M. Sternecker, given in county court, was taken down by a stenographer, and their testimony given in county court was testified to in district court.

During the time here involved, the deceased lived in Elba, Charles on a farm near Ord, Joseph in St. Paul, Nebraska, and the plaintiff, for the last ten or eleven years, in Des Moines and Denver.

There is no question but that, so far as the building and loan stock is concerned, the entire matter was handled by Charles. He sent the money to Lincoln and directed how the stock was to be issued and to whom. He took the money to Ord, purchased the stock, and directed how it was to be issued. On one, or possibly two occasions, the deceased accompanied Charles to Ord, and in her presence Charles directed how the stock was to be issued. There is no testimony as to which certificate was issued when she was present. There is no testimony that the deceased ever directed the stock to be issued as it was issued. Clara M. Sternecker did not testify in district court. She was asked in county court: "Did you have any talk with your father about how he was going to have these made out, those he deposited for?" She answered: "The only thing I can say, I never asked him. That instead of making out in his name *he had them made in*

*mine.* That was the same as it did not make any difference. That was all right. I am his daughter." (Italics ours.)

After issuance, the stock was delivered to the mother, and it appears that it remained in her possession until after her death, including the period of her guardianship. After her death, it was delivered by Charles to the named survivors. At the hearing in the county court, Charles disclaimed definite knowledge of its whereabouts, except as to one certificate. Subsequently, upon orders of the county court, he produced and surrendered the stock in court, including that held by Joseph, who does not claim ownership of the $1,100 which was issued bearing his name as survivor.

There is no testimony that the deceased ever knew that the certificates were made out to others with her. There is testimony by Charles that she "read" not more than three of the certificates, and no testimony that she understood how they were made out or approved such disposition of her funds.

There is testimony that Charles considered the money was his prior to his mother's death, and that his mother was to have the interest upon it during her lifetime. Possibly, this testimony should be limited to the one certificate made payable to him as survivor. Charles testified that it was not his daughter's money until his mother gave it to him for her. Clara M. Sternecker never had the certificates in her possession until after her grandmother's death.

Charles was appointed guardian for his mother in July, 1935. He reported her real estate, no personal property, and in particular did not report the building and loan stock as assets of her estate. In his guardian's report, he shows the collection of interest on this stock, does not report the stock, and certifies that he had "accounted for all of said estate that has come into his possession or knowledge, or the possession of any one for him."

As proof of the fact that the mother did not understand, direct, or approve of the disposition that Charles had made of her property through these certificates, the plaintiff offered the testimony of six disinterested friends and neigh-

bors of the deceased for many years, who testified that on many occasions down to and including the months before her death the deceased told them of her ownership of money and building and loan stock, and that it was to go to Joe, Charles, and Lillian in equal shares.

The plaintiff testified that the deceased told her that she was to have her mother's share, and that Charles had possession of the deceased's money and took care of her affairs.

There is no testimony that the deceased ever told Clara M. Sternecker that she was to be the beneficiary of these funds, or that she ever discussed the matter with her.

This record clearly establishes the fact that the deceased trusted the investment of this money for her to her son Charles, that the disposition of the money invested in these certificates through the device used was Charles' idea, and not that of the deceased; that it was Charles', and not the deceased's disposition of her estate; and that the deceased did not authorize, intend or approve the attempted disposition thereof, and that the deceased did intend that this property, along with her other property, should pass equally to Charles, Lillian, and Joseph, as her heirs at law.

The transfer of the property here involved can only be sustained on the theory that it was a gift from the deceased to her son Charles and her granddaughter, Clara M. Sternecker. The evidence fails to show one of the essential elements necessary—that of a donative intent.

"One of the essential elements of a gift is the intention to make it. A clear and unmistakable intention on the part of the donor to make a gift of his property is an essential element of the gift, and this contention must be inconsistent with any other theory." *Hild v. Hild,* 135 Neb. 896, 284 N. W. 730.

The person asserting it (a gift) "must prove all the essential elements by clear, direct, positive, express and unambiguous evidence." *Hild v. Hild, supra.* See, also, *Johnson v. Omaha Loan & Bldg. Ass'n,* 128 Neb. 37, 257 N. W. 370; *In re Estate of Johnson,* 116 Neb. 686, 218 N. W. 739; *Henley v. Live Stock Nat. Bank,* 127 Neb. 857, 257 N. W. 244; 28

C. J. 622, 626, 662, 664, 681.

In *Ward v. Geary,* 114 Neb. 50, 205 N. W. 1000, this court considered a case where the evidence was much stronger in behalf of the contention of a gift than is the evidence in the instant case. This court there held that the property involved belonged to the estate of the deceased.

Here, also, the evidence fully justifies and requires a finding that the property involved belonged at all times to the deceased and passed at her death as property of her estate.

This conclusion makes unnecessary the consideration of the other questions discussed in the briefs of the parties to this litigation.

The decree of the trial court is

AFFIRMED.