THE MASONIC TEMPLE CRAFT OF OMAHA, A CORPORATION, APPELLEE, v. A. E. STAMM, REVIVED IN THE NAME OF ERIC AMBROSE, ADMINISTRATOR OF THE ESTATE OF ANDREW E. STAMM, DECEASED, APPELLANT, THE FIRST NATIONAL BANK OF OMAHA, ET AL., APPELLEES, JOHN W. NELSON, INTERVENER AND APPELLEE.

42 N. W. 2d 178

Filed March 30, 1950. No. 32737.

John D. Wear, John R. McCormack, T. F. Hamer, and Hadley Kelsey, for appellant.

Gaines, Shoemaker & Crawford, and John M. Peters, for intervener and appellee John W. Nelson.

Joseph B. Fradenburg, for appellee Masonic Temple Craft of Omaha.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ..

CHAPPELL, J.

This action originated when plaintiff filed a bill of interpleader to save itself harmless in the redemption or payment of four coupon bonds, each for the principal sum of $500, payable to bearer, with interest at three percent accruing semiannually. The bonds were issued by plaintiff on December 15, 1941, and subsequently delivered to Andrew E. Stamm, hereinafter generally designated as Stamm, who was thereafter at all times, according to plaintiff's records, the owner thereof. Prior to filing the action, notice of call for redemption of two of the bonds, as provided therein, was forwarded to Stamm, who, by his agent or guardian, notified plaintiff that after diligent search the bonds could not be found and ordered it not to pay the proceeds of such bonds to any other person because Stamm was the owner thereof. Thereafter, however, the bonds came into the possession of defendant First National Bank of Omaha, having been forwarded to it by defendant Seattle First National Bank for collection or sale. During pendency of the action, the

other two bonds were called for redemption, and subsequently, by appropriate order the proceeds of all the bonds were impounded by the court, where they still remain.

Eric Ambrose, a nephew of Stamm, as guardian of his person and estate, answered plaintiff's petition, alleging substantially that the bonds were owned by and the property of Stamm, and that the guardian was entitled to the possession thereof.

John W. Nelson, a nephew of Stamm, thereafter filed a petition in intervention, alleging substantially that subsequent to issuance of the bonds by plaintiff, and at a time when Stamm was competent, they were turned over to intervener by him as a gift, since which time intervener had been the owner in possession thereof, and had forwarded same to the Omaha bank through the Seattle bank for redemption. Intervener thus claimed that, as owner, he was entitled to the proceeds.

In the meantime Stamm died, and the action was revived in the name of Eric Ambrose, executor of the estate of Andrew E. Stamm, deceased. The executor as such then answered the petition in intervention, denying generally the allegations thereof.

After a hearing whereat evidence was adduced, the trial court found and adjudged that intervener was owner of the bonds and entitled to the proceeds. The respective defendant banks were ordered discharged upon delivery and surrender of the bonds by the Omaha bank to the clerk of the district court, who was ordered to receipt for and surrender same to plaintiff, who had already paid $2,285, the full amount due thereon with interest, to such clerk. A balance of $2,140.27 remaining after payment to plaintiff and its attorney of certain cost items, was ordered paid to intervener, and the costs of the action were taxed to the executor.

The executor appealed, and the issues presented here, as in the trial court, were primarily those arising out of intervener's petition, wherein he claimed the proceeds

by reason of the alleged gift of the bonds to him by Stamm, and the answer thereto filed by the executor. As the record comes to us, the sole question for decision is whether or not the undisputed evidence was sufficient to sustain the judgment finding and adjudging that intervener was owner of the bonds and entitled to the proceeds. We conclude that it was not.

An examination of the record discloses, and it is admitted, that relevant competent evidence adduced in intervener's behalf established nothing except that he had obtained possession of the bonds at his mother's home, where deceased then lived, sometime in 1942 or 1943, and had retained possession thereof ever since. He had no written assignment of the bonds, which of themselves disclosed that none of the interest coupons due or becoming due and payable while in intervener's possession were ever presented for payment.

In that connection, intervener argued that since the bonds were payable to bearer, such possession alone raised a presumption of legal title and ownership in intervener, and was sufficient to make a prima facie case in the absence of any evidence rebutting such presumption. In that light, intervener also argued that the allegations of his petition with regard to the gift of the bonds, not being indispensable to establish such a prima facie case, should be disregarded as mere surplusage. We conclude that such contentions have no merit.

It will be observed that this action was not one by the holder of a negotiable instrument payable to bearer against the maker to recover thereon. Rather, it was one to determine the ownership of choses in action, personal property, between an alleged owner in possession thereof by gift, against the alleged donor who was in fact admittedly previously the true owner, which action ultimately survived as against the executor of his estate who had a right to possession of all the personal property of deceased. § 30-406, R. R. S. 1943.

There was no competent evidence adduced by inter-

vener, either direct or circumstantial, indicating how intervener got possession of the bonds. In other words, there was no evidence whatever of delivery by deceased to intervener, or that such was done with donative intent. In that regard, mere possession is distinguishable from actual delivery since there may be possession where there has been no delivery, although there can be no valid delivery unless possession, actual or constructive, accompanies it. It is not mere possession by the donee that is material, but rather actual or constructive delivery to him by the donor with the present intent to transfer title to him and thus make a gift. 28 C. J., Gifts, § 21, p. 633; 38 C. J. S., Gifts, § 18, p. 797.

The owner of a negotiable instrument payable to bearer negotiates it or transfers the title thereto to another by delivery of the instrument to him with intent to do so. § 62-130, R. S. 1943. See, also, 10 C. J. S., Bills and Notes, §§ 185 and 188, pp. 681 and 683, § 226, p. 717. Mere physical possession of such an instrument, by one claiming ownership thereof by gift from an admitted former owner without competent evidence of delivery by him, is insufficient to make a prima facie case against such former owner.

In Yardum v. Evans, 120 Neb. 699, 235 N. W. 85, this court held: "Possession by an alleged donee of personal property of the alleged donor, after the death of the latter, raises no presumption of ownership in the alleged donee."

In In re Yeager's Estate, 273 Pa. 359, 117 A. 67, it was said: "Primarily, the donee must show an executed gift 'not only because the original ownership (of the fund) is presumed to continue, but also because the defense is an affirmative one which necessarily carries with it this duty': McConville v. Ingham, 268 Pa. 507, 518."

In the headnote, 25 A. L. R. 643, citing many cases, it was said: "As stated above, it is a settled principle in the law of gifts that there must be a delivery of the subject thereof. That principle is uniformly applied in cases of

gifts of bills and notes; there must be a delivery to complete the gift." Also, as stated by the same authority at page 647: "The act which most clearly evidences a delivery of a note is the act of the donor in handing the note to the donee. The cases uniformly hold—except in Louisiana—that, where the donor hands a note to the donee in pursuance of his intention to make a gift of the same to the donee, there is a sufficient delivery to constitute a completed gift." See, also, 24 Am. Jur., Gifts, § 84, p. 774; 38 C. J. S., Gifts, § 45, p. 822.

As stated in 28 C. J., Gifts, § 61, p. 660: "The actual delivery of negotiable bonds, with words or acts indicating a present absolute gift, constitutes a valid gift inter vivos."

In Fouts v. Nance, 55 Okl. 266, 155 P. 610, L. R. A. 1916E 283, citing many authorities, it was said: "There must be some act or circumstance shown amounting to an actual delivery at the time of the gift. It is not the possession by the donee that is material, but the delivery to him by the donor."

In 28 C. J., Gifts, § 83, p. 679, it was said: "The mere possession of the property by the donee is not sufficient evidence of a gift, for this may be consistent with a mere custody or agency."

As said in In re Wilson's Estate, 140 Misc. 10, 250 N. Y. S. 553, citing cases: "The burden is on the claimant. The possession of the bank books must be accompanied by some proof of delivery, which is not present in the instant case. Possession alone is not enough."

In Chipman's Adm'r. v. Gerlach, 286 Ky. 157, 150 S. W. 2d 633, it was said: "The fact of manual possession of a chattel is not of itself sufficient to warrant the presumption that there had been an actual delivery of it and an irrevocable and unconditional transfer of title."

In Rothwell v. Taylor, 303 Ill. 226, 135 N. E. 419, it was said: "Let us assume that because plaintiff had possession of the notes and certificates before her aunt's death it must be presumed, unless the contrary is shown,

that her aunt delivered them to her. Would the presumption also follow, as a matter of law, that the delivery was with intent to pass title? The intent to pass title by delivery is an essential element of a valid gift."

In Keepers v. Fidelity Title and Deposit Co., 56 N. J. Law 302, 28 A. 585, 44 Am. S. R. 397, 23 L. R. A. 184, speaking of gifts, it was said: "Around this mode the requirement of actual delivery is the only substantial protection, and the courts should not weaken it by permitting the substitution of convenient and easily-proven devices."

In Whalen v. Milholland, 89 Md. 199, 43 A. 45, 44 L. R. A. 208, after citing and quoting from Keepers v. Fidelity Title and Deposit Co., *supra,* it was said: "Mindful of the facility with which, after the alleged donor is dead, fraudulent claims of ownership may be founded on pretended gifts of his property asserted to have been made while he was living, it is but a salutary precaution which demands explicit and convincing evidence of every element needed to constitute a valid donation, whether it be a donation inter vivos or mortis causa."

This court has held that: "When a party pleads a fact which is material to the issue being tried, he thereby assumes the burden of proving the existence of such fact." Fairchild v. Fairchild Clay Products Co., 141 Neb. 356, 3 N. W. 2d 581.

The rule generally is that a party who claims personal property of whatever character by gift inter vivos or mortis causa has the burden of establishing every essential element thereof by clear, satisfactory, and convincing evidence. Yardum v. Evans, *supra;* In re Yeager's Estate, *supra;* In re Wilson's Estate, *supra;* Bosserman v. Watson, 230 Iowa 627, 298 N. W. 804; 28 C. J., Gifts, § 71, p. 669; 38 C. J. S., Gifts, § 65, p. 854.

In In re Estate of Sternecker, 136 Neb. 813, 287 N. W. 659, it was held: " 'One of the essential elements of a gift is the intention to make it. A clear and un-

mistakable intention on the part of the donor to make a gift of his property is an essential element of the gift, and this contention must be inconsistent with any other theory.' The person asserting it (a gift) 'must prove all the essential elements by clear, direct, positive, express and unambiguous evidence.'" See, also, Hild v. Hild, 135 Neb. 896, 284 N. W. 730; Ralston v. Marget, 138 Neb. 358, 293 N. W. 124; In re Estate of Scott, 148 Neb. 182, 26 N. W. 2d 799; 28 C. J., Gifts, § 82, p. 676; 38 C. J. S., Gifts, § 67, p. 869.

In First Trust Co. v. Hammond, 140 Neb. 330, 299 N. W. 496, it was held: "To make a valid and effective gift inter vivos, there must be an intention to transfer title to the property, and a delivery by the donor and acceptance by the donee, and the transfer must be so complete that if the donor again resumes control over it without the consent of the donee he becomes liable in trespass." See, also, Jones v. Ewart, 143 Neb. 717, 10 N. W. 2d 708.

In the light of the foregoing, it will be observed that intervener failed entirely to make a prima facie case, which disposes of both contentions made by him. Cases relied upon by him are distinguishable either upon the facts or the character of the relief sought therein. To discuss them at length would serve no purpose.

For the reasons heretofore stated, the judgment of the trial court should be and hereby is reversed, with directions to enter a judgment against intervener and for Eric Ambrose, executor of the estate of Andrew E. Stamm, deceased, and direct that the clerk of the district court pay the proceeds of such bonds to him as representative of the estate. Costs are taxed to intervener.

REVERSED AND REMANDED WITH DIRECTIONS.