PATRICIA ANN JOHNSON, A MINOR, BY AND THROUGH HER FATHER AND NEXT FRIEND, GERALD JOHNSON, APPELLANT, v. WILLIAM F. EVERS AND UNION PACIFIC RAILROAD COMPANY, A CORPORATION, APPELLEES.

238 N. W. 2d 474

Filed February 11, 1976. No. 40193.

James R. Welsh and G. Michael Kealhover of Riedmann & Welsh, for appellant.

Patrick W. Healey of Healey, Healey, Brown, Wieland & Burchard, for appellee Evers.

Daniel P. Morisseau, for appellee Union P. R.R. Co.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

This is an action for personal injuries sustained by plaintiff in an automobile accident. The defendants were William F. Evers and Union Pacific Railroad Company. The District Court sustained a motion for summary judgment by the Union Pacific Railroad Company

and dismissed that defendant. The plaintiff has appealed.

On April 18, 1966, the plaintiff, Patricia Ann Johnson, then a 9-year-old girl, was a passenger in a car driven by her mother, Frieda Johnson. There was a head-on collision between the Johnson car and a car driven by William F. Evers. The accident occurred on a highway in Garden County, Nebraska. Plaintiff suffered severe injuries for which she seeks recovery in this action, brought on her behalf by her father. The critical issue here is whether the alleged negligence of William F. Evers can be imputed to the defendant, Union Pacific Railroad Company.

William F. Evers had been employed by the Union Pacific Railroad Company as a brakeman or conductor since 1943. For some years prior to 1966, he had worked for the Union Pacific in a western Nebraska district, which included Torrington, Wyoming. During those years he worked and lived in several different towns, including two times in both Torrington, Wyoming, and North Platte, Nebraska. For some 2 years prior to April 1, 1966, he had lived in and worked out of Torrington, Wyoming. About April 1, 1966, there was a reduction in assignments for trainmen at Torrington and Evers moved to North Platte, Nebraska, and went to work off the extra board at that location. He preferred to work in Torrington, Wyoming, and wished to return there whenever there were assignments available. When he moved to North Platte he did not take all his clothing and belongings and some were left in Torrington.

From April 1 until the date of the accident he lived in a hotel in North Platte and worked on assignment from the extra board. He worked on the night of April 17, 1966, and then returned to his hotel. On the morning of April 18, 1966, Evers called the crew dispatcher about any jobs which might be opening up in Torrington and was told that there were no openings and would be

none. Evers also inquired as to the probable length of time before his next job would come up on the extra board and was told that it would not be on that day or the next. In one deposition Evers stated that someone at the railroad told him that he was going to have to work in North Platte and that he was going to have to move all his belongings from Torrington to North Platte. Evers also said he was told to go ahead and get his clothes. The persons who made such statements were not specifically identified although the implication is clear that he was referring to the crew caller. On cross-examination Evers agreed that the crew caller did not order him to go to Torrington to pick up his belongings. Evers also knew that he would not receive any pay for the trip.

The affidavit of the trainmaster for the Union Pacific Railroad Company shows that he was at that time the operating officer having direct supervision and control over all brakemen and conductors, and crew callers and crew dispatchers, within his geographical jurisdiction, including specifically William F. Evers; and that all orders to any of them would be issued by him or through his office. The affidavit also shows that "Mr. William F. Evers was at no time instructed by me to travel to Torrington, Wyoming on April 18, 1966, or any other date to recover certain of his personal belongings left there when he had moved to North Platte, Nebraska earlier in that same month or for any other reason."

The affidavit also shows that crew callers or crew dispatchers keep a roster of train crew personnel in seniority order known as the "extra board" from which crews are called in rotation order. Such employees do not issue orders to trainmen. They supply information to trainmen making inquiries as to the type of jobs which are open for bidding on the basis of the trainmen's seniority and the number of turns which an individual trainman may be away from what is likely to be the next call for duty as a member of a train crew.

After Evers' telephone conversation on the morning of April 18, 1966, Evers started to drive to Torrington, Wyoming, in his car to get his clothes and belongings. On that trip the accident occurred and the plaintiff was injured. The District Court sustained the motion of the Union Pacific Railroad Company for summary judgment and this appeal followed.

The plaintiff contends that there is a factual dispute and that Evers was acting in furtherance of the business of the Union Pacific Railroad Company in that the trip would incidentally or indirectly contribute to the service and benefit of the employer.

Restatement, Agency 2d, § 228, p. 504, provides: "(1) Conduct of a servant is within the scope of employment if, but only if:

"(a) it is of the kind he is employed to perform;

"(b) it occurs substantially within the authorized time and space limits;

"(c) it is actuated, at least in part, by a purpose to serve the master, and * * *."

Comment c to that section makes it clear that there is no liability for the conduct of one who, although a servant in performing other services, is doing work as to which there is no control or right to control by the master.

A corporation is liable for the negligent operation of an automobile by its agent or servant only when such agent or servant is engaged in the employer's or principal's business with its knowledge and direction. Scott v. Service Pipe Line Co., 159 Neb. 36, 65 N. W. 2d 219.

In an action against an employer for personal injuries inflicted by an employee upon a third person by the negligent use of an automobile owned and operated by the employee, the burden is on the plaintiff to prove that the employee was acting within the scope of his employment at the time of the injury. Sutton v. Inland Constr. Co., 144 Neb. 721, 14 N. W. 2d 387. In Scott v. Service Pipe Line Co., *supra,* this court quoted the fol-

lowing with approval: " 'It is not enough, in order to establish liability, to show that the master has an interest in what is being done. It must also be made to appear that the servant whose act is in question has authority from the master to perform the class of service to which the act belongs. * * *.' "

The doctrine of respondeat superior is applicable only when the employment relation can be found to exist at the time and with respect to the conduct giving rise to the injury. Cobb v. United States, 247 F. Supp. 505, affirmed, 367 F. 2d 132.

In this case the purpose for Evers' trip was personal. The trip was entirely outside the space and time limits of his employment, and driving an automobile was not in any sense within the class of work for which he was hired. It was beyond the ability of the employer to assert any control, directly or indirectly, over Evers' conduct or performance. There are many off-duty activities of employees which might be said to benefit employers to some degree, but ordinarily they constitute no part of the work employees are hired to perform. If an employer were liable under the circumstances here simply because of some remote possibility of indirect benefit to him, there would be virtually no limit to the liability which could be imposed upon an employer for the off-duty torts of any employee on his payroll. There is no justifiable reason for such an extension of the doctrines of legal liability.

Section 25-1332, R. R. S. 1943, provides that summary judgment shall be rendered where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Randall v. Erdman, 194 Neb. 390, 231 N. W. 2d 689.

The plaintiff contends that there are factual issues in dispute as to whether or not Evers was ordered or directed to take the trip. Nevertheless, the purpose of a motion for summary judgment is to pierce the allegations of the pleadings and to show that the controlling

facts are clear and that no genuine issue of fact remains for trial. On the record presented here the defendant was entitled to judgment as a matter of law.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.