HERMAN JUERGENS AND EVERETT ANDERSON, EXECUTORS OF THE LAST WILL AND TESTAMENT OF CLARA J. CAVETT, DECEASED, APPELLEES, v. PAUL REDDING, APPELLANT.

252 N. W. 2d 291

Filed April 13, 1977. No. 40845.

Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellant.

Nichols & Meister, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

McCOWN, J.

This is an action by the executors of the estate of Clara J. Cavett, deceased, for judgment on two promissory demand notes dated November 1 and November 30, 1971, in the total principal amount of $68,221.60, made by the defendant, Paul Redding. The defendant filed an answer in which he admitted the making of the notes and their delivery to the payee, Clara J. Cavett. He further alleged that in November 1971, the decedent made a gift to him of two groups of United States Series E bonds, which he cashed at that time, which had a value of $42,069.60 and $26,152 respectively; that it was agreed that defendant would report and pay the income tax on the accumulated interest on those bonds; that defendant thereafter reported $30,721.60 as his own income; that after the gift had been made, the decedent, in December 1971, suggested that to avoid paying United States gift tax, the defendant should make two notes payable to decedent, and decedent would, in turn, make a will forgiving the notes upon death; and that accordingly the defendant prepared and executed the notes in January 1972, but backdated them to the date the respective

groups of bonds were cashed. Defendant also alleged that prior to the death of the decedent no request for payment of principal or interest was ever made by decedent, and that on or about September 23, 1972, the decedent did execute a will forgiving any balance due from defendant on the notes. The defendant alleged that because of these facts the bonds received by him were a gift and not a loan, and that nothing was owed on the promissory notes. Plaintiffs replied denying defendant's allegations.

Thereafter each party moved for summary judgment, supporting the motions with affidavits, depositions, admissions, and answers to interrogatories. The District Court granted the motion of the plaintiffs, denied that of the defendant, and rendered judgment against defendant for the amount of the notes plus interest. The defendant has appealed contending that the showings made in the record establish that there was a genuine issue of material fact, and that he was entitled to a trial on the merits.

Clara J. Cavett was a resident of Bayard, Nebraska. Dale Redding, her nephew, and the defendant, Paul Redding, his son, farmed together in Texas on land owned by Paul. In July 1971, the decedent visited Dale and Paul in Texas. In Dale's deposition he states that he told the decedent that he and Paul were going to build a feedlot as soon as they could see their way clear to finance it, and that she told him she had some money that he could have. He replied that he would not take it unless she would forgive it in her will like her brothers had done. Her response was: "That is fine. I want you to have it." At a later conversation the decedent told Dale that she had bonds which had accumulated interest on them, and that she did not want to cash the bonds and give the money because she would have to pay income tax on the earned interest. Dale suggested that she could give the bonds to Paul and let him pay any tax. Paul had a loss carryback and could absorb

the interest income against that loss. He suggested that she check with her lawyer when she got home. There was no conversation about promissory notes.

After the decedent returned home to Nebraska, she advised Dale she had been informed that whoever cashed the bonds would have to pay the income tax on the accumulated interest. The decedent thereafter caused Paul's name to be placed on the bonds as coowner with her, and sent the bonds to Paul in Texas in care of a production credit association. Paul received the first group of bonds on November 1, 1971, and cashed them on November 3, 1971, for the sum of $42,069.60. The second group of bonds were received and cashed by Paul on November 30, 1971, for the sum of $26,152. On the same day Paul wrote to the decedent thanking her for the gifts and advising her of the purchase cost and interest amounts on both groups of bonds. The $30,721.60 interest was later reported by Paul on his 1971 income tax return and it was not reported by the decedent.

Dale testified in his deposition that in December of 1971, he visited the decedent in Nebraska. At that time she was concerned about having to pay a gift tax on the bonds given to Paul. Dale suggested that if notes were issued to her, then she could establish to the Internal Revenue Service that the gift was intended to be made at death if there was a provision in her will that the notes were to be forgiven. She agreed to do so. On his return to Texas, Dale directed Paul to make and deliver the notes and told him that the decedent would make a will forgiving the indebtedness, and that Paul would not have to repay the notes. On January 12, 1972, Paul obtained two bank note forms, filled them out in accordance with the instructions from Dale, backdated them to the dates of receipt of the bonds, and executed the notes. On or shortly after January 12, 1972, he mailed the notes to the decedent.

The decedent died in April 1973, leaving a will

made a few days before her death, which was admitted to probate, which revoked former wills, and which did not forgive any indebtedness. After her death, Dale and Paul discovered that in September 1972, the decedent had executed a previous will in which she forgave "any balances remaining due" on notes of Paul Redding and certain other named persons.

Following their appointment as executors, the plaintiffs brought this action for the collection of the notes. Herman Juergens, as executor, made the following assertions in support of the motions for summary judgment on the notes. He stated that around Christmas of 1972, the decedent told him that Paul had not paid interest on the notes, and that she was not going to give him his $3,000 Christmas gift until he did. In several other conversations, the decedent mentioned the fact that Paul had not paid any interest, and that she hoped he would pay the notes on time since they had been made at a very decent interest rate. He also asserted that in a conversation with the decedent concerning her final will she had inquired if Juergens intended to pay his note due her, and also stated that she expected Paul to pay his. The worksheet for the decedent's will, which Juergens wrote on her instructions, stated that the loan to Paul was to be included and the will itself made no mention of forgiving the notes. Juergens also asserted that the decedent was a good businesswoman and that when he had borrowed money from her, she had the note prepared and delivered to him for execution.

There is also evidence that after decedent's death there was some discussion by Dale about using his share of the residue to pay Paul's notes, and that after learning of the September 1972 will, he advised the attorney for the estate that he would not assign his share, nor would the notes be paid off.

There is also evidence that the decedent came to

live with Juergens in October 1972, because she was sick and needed someone to take care of her, and that during the time she lived with Juergens prior to her death, she received numerous X-ray treatments and took a substantial amount of prescription drugs.

There is a great deal of additional evidence in the record which would be material and relevant on the ultimate issue of fact as to whether the delivery of the bonds by the decedent to Paul was intended to be a gift or was intended to be a loan. Many other substantive issues of material fact which bear directly or indirectly on the ultimate issue are also in conflict. The ultimate issue and these issues, however, are for resolution by a fact finder and not for determination on a motion for summary judgment.

The moving party is not entitled to summary judgment except where there exists no genuine issue as to any material fact and where under the facts he is entitled to judgment as a matter of law. Summary judgment is an extreme remedy and should be awarded only when the issue is clear beyond all doubt. Any reasonable doubt touching the existence of a material issue of fact must be resolved against the moving party. Barnes v. Milligan, 196 Neb. 50, 241 N. W. 2d 508.

Where the ultimate inferences to be drawn from the facts are not clear, the inferences are not conclusively established, and it cannot be determined whether a party is entitled to judgment as a matter of law. Green v. Village of Terrytown, 189 Neb. 615, 204 N. W. 2d 152.

The issue to be tried on a motion for summary judgment is whether or not there is a genuine issue as to any material fact and not how that issue should be determined. In considering a motion for summary judgment, the court should take that view of the evidence most favorable to the party against whom the motion is directed, giving to that party the benefit of all favorable inferences which may

reasonably be drawn from the evidence. If, when so viewed, reasonable men might reach different conclusions, the motion should be denied and the case tried on its merits. Valentine Production Credit Assn. v. Spencer Foods, Inc., 196 Neb. 119, 241 N. W. 2d 541.

The requirements to sustain a motion for summary judgment are the same whether one party or both parties have moved for summary judgment. Hiram Scott College v. Insurance Co. of North America, 187 Neb. 290, 188 N. W. 2d 688.

On the basis of the record here, substantial material facts are in dispute and the ultimate inferences to be drawn from uncontroverted facts are far from clear and conclusive. The record fails to establish the plaintiffs' right to judgment as a matter of law, and the facts and inferences are not subject to determination on a motion for summary judgment. The judgment is reversed and the cause remanded to the District Court for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

CLINTON, J., dissenting.

I respectfully dissent. After having examined the record, I believe that the issue of whether there is a dispute of material fact turns upon the sufficiency of the facts attested to in the deposition of Dale Redding, defendant's father, and the legal sufficiency of the affidavit of the defendant offered and received in evidence at the hearing on the motion. I believe the facts in those instruments are insufficient and I would affirm the judgment of the District Court.

Clara J. Cavett, whom I will hereafter refer to as Aunt Clara, was a resident of Bayard, Nebraska. Dale Redding, her nephew, and the defendant Paul Redding, son of Dale, farmed together in Texas on land owned by Paul. In July 1971, Aunt Clara visited Dale and Paul in Texas. With reference to

the matter before us Dale testified in his deposition that on the occasion of that visit the following occurred: ". . . when we got down there she saw the farm land and the fish ponds and she said, 'I thought you were going to build a feed lot?' And I said, 'We were going to as soon as I see our way clear to finance it.' And she said, 'I have some money that you can have.' And I said, 'I wouldn't take it unless you will forgive it in your will just like your brothers did in their wills.' And she said, 'That is fine, I want you to have it.' " He further testified that Aunt Clara told him: ". . . that she had these bonds that had more interest due on them than the bonds cost originally and she didn't want to cash the bonds and give the money to Paul because she would have to pay the income tax on the earned interest. And I said, 'That is simple. Paul has had several years of financial setbacks here and he could handle the interest real well in a loss carry back or whatever you do in income taxes.' And I said, 'Don't take my word for it ask somebody that knows. Ask your lawyer when you get home.' " He testified there was no conversation about promissory notes on that occasion and that after Aunt Clara returned home she advised Dale that she had been informed that whoever cashed the bonds would have to pay the income tax on the interest from the bonds when cashed.

Later Aunt Clara caused Paul's name to be placed on the bonds as coowner with her and they were sent to Paul in Texas in two groups in care of a Production Credit Association which delivered them to Paul, who cashed them and used the money.

In December of 1971 Dale visited Aunt Clara in Bayard. In Dale's deposition inquiry was made as to conversations with Aunt Clara at that time. He responded: "She was concerned about gift tax and again I told her about my father being so unhappy with his gift tax having paid it and wished that he hadn't done it that way and wished that he would

have left it in his estate. And I suggested the possibility that if we would issue her notes that she could have in her file and then if the Internal Revenue Service or estate people, whoever checks, ever checked, well, she could say, 'Here are the notes. I didn't have to declare it as a gift. The notes are to be forgiven in the will. So, it carries it over to my death.' And she thought it was a good idea. So that is what she did." Dale, on his return to Texas, directed Paul to make and deliver the notes and testified: "I told him that I insisted that she forgive it in her will." On November 30, 1971, Paul wrote Aunt Clara a letter which said: "Thank you very much for the use of the proceeds of the bonds." (It is to be here noted that this is the evidence, not as the majority opinion implies that he was thanking Aunt Clara for a gift.) He then in the letter went on to advise Aunt Clara of the amounts of principal and interest in each group of bonds.

The affidavit of the defendant Paul Redding is in part as follows: "During the middle of July, 1971 my Aunt Clara Cavett visited me at my home and at our farm near Kamay, Texas. She had talked with Dale Redding, my father, and myself in reference to helping us build a feed lot we wanted to construct on my land. From conversations I had with her at that time, she offered to give, either myself or my father, U. S. Savings Bonds which she said she didn't need and didn't want to pay the Income Tax on the accrued interest. At this time promissory notes for repayment to her were not mentioned. The transaction was to be a gift, and the only question was to whom, either myself or my father. She had stated 'she wanted to at least help in some way'."

Aunt Clara died in April 1973, leaving a will made a few days before her death which was admitted to probate, which revoked former wills, and which did not forgive any indebtedness. There was evidence to show that in September 1972 Aunt Clara had made

a will in which she forgave "any balances remaining due" on notes of Paul Redding and certain other named persons.

As the majority opinion notes, there is a good deal of other evidence in the record which would be material and relevant on the burden of persuasion if the case were to be tried on the merits. However, the basic question is whether the testimony of Dale and Paul above recited is sufficient to support a finding of donative intent on the part of Aunt Clara in connection with the delivery of the bonds, thus raising a disputed material question of fact so as to entitle the defendant to a trial on the issue of whether there was any consideration given for the promissory notes.

The essential elements of an inter vivos gift of personal property are (1) donative intent on the part of the giver, (2) delivery by the donor, and (3) acceptance by the donee. In re Estate of Scott, 148 Neb. 182, 26 N. W. 2d 799. The evidence of donative intent must be clear and unmistakable and inconsistent with any other theory. Hild v. Hild, 135 Neb. 896, 284 N. W. 730; In re Estate of Sternecker, 136 Neb. 813, 287 N. W. 659; Ralston v. Marget, 138 Neb. 358, 293 N. W. 124; In re Estate of Scott, *supra;* Dunbier v. Stanton, 170 Neb. 541, 103 N. W. 2d 797. It is clear in this case that title to the bonds was effectively transferred by change of ownership in accordance with government regulations applicable thereto and acceptance and cashing of the bonds by Paul. The disputed issue here is donative intent.

The testimony of Dale, the substance of which was that the money would not be accepted unless Aunt Clara would forgive the debt in her will and that she agreed thereto is completely inconsistent with any donative intent on the part of Aunt Clara. A debt can be forgiven. Such language is not applicable to a completed gift.

Dale's affidavit does not with specificity contra-

dict Dale's testimony as to the nature of the contemplated transaction. He says: *"From conversations* I had with her at that time (July 1971 in Texas) she offered . . . . The transaction was to be a gift . . . ." (Emphasis supplied.) These are statements of conclusions. They do not set forth facts which would be admissible in evidence.

Section 25-1334, R. R. S. 1943, provides in part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

In applying this statute in Eden v. Klaas, 165 Neb. 323, 85 N. W. 2d 643, we said, referring to 3 Barron and Holtzoff, Federal Practice and Procedure, and the federal rule comparable to section 25-1334, R. R. S. 1943: " 'Under this provision, therefore, statements in affidavits as to opinion, belief, or conclusions of law are of no effect. The same is true of summaries of facts or arguments, and of statements which would be inadmissible in evidence * * *,' " and " 'Hence we have often held that mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment.' "

The purpose of summary judgment is to pierce allegations of the pleadings and to show that controlling facts are clear and that no genuine issue of fact remains for trial. Johnson v. Evers, 195 Neb. 426, 238 N. W. 2d 474. Motion for summary judgment may be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Johnson v. Evers, *supra.*

The defendant having not shown in the manner required by statute that a genuine issue of fact existed on the claimed defense of no consideration, I would affirm the judgment of the District Court.