MELVIN D. STRONG AND PATRICIA A. STRONG, APPELLANTS, v. K & K INVESTMENTS, INC., DOING BUSINESS AS K & K DISTRIBUTING, ET AL., APPELLEES.

343 N.W.2d 912

Filed February 3, 1984. No. 82-648.

J. Michael Moriarty, for appellants.

John C. Brownrigg of Erickson, Sederstrom, Leigh, Eisenstatt, Johnson, Kinnamon, Koukol & Fortune, P.C., for appellees.

BOSLAUGH, WHITE, and SHANAHAN, JJ., and NORTON, D.J., and COLWELL, D.J., Retired.

NORTON, D.J.

This is an appeal from the district court for Douglas County, Nebraska, sustaining a motion for summary judgment.

The case arises out of an altercation which occurred on or about December 20, 1980. Melvin and Patricia Strong, husband and wife, were general managers of the Best Western Omaha Inn, a hotel located in Omaha, Nebraska. Defendant-appellee K & K Investments, Inc., is a liquor and beer distributor in and about Omaha, Nebraska. Persons in the employ of K & K were also named as defendants in the trial court. Those persons are not parties to this appeal.

On or about December 19, 1980, K & K sponsored a

Christmas party for its personnel. For these purposes it had rented space at the Omaha Inn. Alcoholic beverages were furnished by K & K and were served at the party. It appears that the party concluded around midnight, at which time certain of the K & K personnel left the party area and went into the hotel lobby and/or public lounge. The party area and lounge are located at opposite ends of the hotel. In the lounge entertainment and beverages were available. Working or assisting in the lounge at that time were Rodney and Gary Strong, sons of the plaintiffs.

At approximately 1 a.m., December 20, 1980, the lounge closed and the patrons began to leave. Shortly thereafter, an altercation broke out upon the premises of the hotel. Melvin Strong was notified. Upon reaching the parking lot of the hotel, he found a fight in progress, involving his sons and certain K & K personnel. In what Mr. Strong described as an attempt to stop this fight, he became involved, and sustained various injuries which he claims were the result of an intentional assault and battery upon him by K & K personnel.

In addition to the foregoing facts the evidence produced at the time of the hearing on the motion indicates that the K & K personnel involved in this altercation had attended the Christmas party and had consumed alcoholic beverages furnished by K & K. The evidence further indicates that, following the party, these same persons had gone into the public lounge and some were served drinks. The evidence also indicates that previous to this date some of those persons had been involved in fights and that one of them had been convicted of assault and battery. There is no evidence to show, or even raise the inference, that the latter facts were known to K & K on December 19 and 20, 1980.

Subsequently, an action for damages was filed, and K & K was joined as a defendant by reason of its employment of the other defendants. In due course,

K & K filed a motion for summary judgment. After a hearing the trial court sustained that motion and dismissed plaintiffs' petition as to K & K. In its order the trial court stated in part: "The Court finds that the closing of the sponsored event and the removal therefrom in space and time of the melee separate K & K from any causal connection with plaintiff's injuries, on any theory of asserted primary or vicarious liability cognizable in law. There is no genuine issue as to any material fact which, resolved favorably to plaintiff, would fasten liability upon K & K . . . ." The only issue presented to us by this appeal is the propriety of the trial court's action in sustaining the motion.

It is fundamental that the purpose of a summary judgment proceeding is to pierce allegations of pleadings and to show conclusively that the controlling facts are otherwise than alleged and that the moving party is entitled to judgment as a matter of law. *Frazier, Inc. v. 20th Century Builders, Inc.*, 188 Neb. 618, 198 N.W.2d 478 (1972). It is equally as fundamental that the granting of summary judgment is an extreme remedy and should be awarded only when the issue is clear beyond all doubt. Any reasonable doubt touching the existence of a material issue of fact must be resolved against the moving party. *Hiram Scott College v. Insurance Co. of North America*, 187 Neb. 290, 188 N.W.2d 688 (1971); *Juergens & Anderson v. Redding*, 198 Neb. 289, 252 N.W.2d 291 (1977).

In their assignments of error the plaintiffs claim that material issues of fact did exist in this case which, if resolved favorably to them by the trial court, would have resulted in liability being imposed upon K & K for any one of the following reasons: (1) Breach of K & K's duty as employer to control use by its employees of chattels belonging to K & K; (2) Breach of K & K's duty as employer to control the conduct of its employees on premises in the possession of K & K; (3) The doctrine of respondeat

superior; or (4) Negligence by K & K in hiring and retaining employees known to have violent propensities or in providing such employees, in a public building, a party at which large quantities of alcoholic beverages were served.

It might be well at this point to note that woven into the fabric of plaintiffs' assignments of error is the implication of liability based upon negligence or implied negligence for the act of furnishing alcoholic beverages to others who thereafter commit a tort upon third persons. Plaintiffs apparently take the position that the provisions of Neb. Rev. Stat. § 53-180 (Cum. Supp. 1982) in some fashion enlarge the civil liability of K & K as master, simply because it furnished or served alcoholic beverages to persons standing in a servant relationship to it. However, there is no longer a dramshop or civil liability act imposing strict liability for violations of this statute in Nebraska. See *Holmes v. Circo*, 196 Neb. 496, 244 N.W.2d 65 (1976). This implication is rejected insofar as it might permeate the assignments of error, as it was obviously rejected by the trial court.

Bearing this in mind, there are only two issues involved in this appeal. The first is whether or not material facts existed which would justify submitting to a jury the question of the nature and extent of K & K's business activities. The second, while in part conditioned upon a determination of the first question, also involves the scope of responsibility imposed by law upon an employer in hiring and retaining employees.

This court has previously stated that in order to sustain a recovery under the doctrine of respondeat superior, the relationship of master and servant must be shown to exist at the time of the injury and with respect to the particular transaction resulting in the alleged tort, and the servant must be shown to be acting within the scope of his employment. *Sperry v. Greiner*, 175 Neb. 524, 122 N.W.2d 463

(1963). Further, the court has stated that the conduct of a servant is within the scope of employment if, but only if, it is of the kind he is employed to perform, it occurred substantially within the authorized time and space limits, and it is actuated, at least in part, by a purpose to serve the master. *Johnson v. Evers*, 195 Neb. 426, 238 N.W.2d 474 (1976). In the earlier case of *Scott v. Service Pipe Line Co.*, 159 Neb. 36, 65 N.W.2d 219 (1954), the court said: "The acts of an employee are within the scope of the employment if, and only if, such acts are the class he is employed to perform or incidental thereto, or are the result of special instructions or directions to perform them. . . . In the absence of special authority it is not enough, in order to establish liability on the part of an employer, to show that the employer has an interest in what is being done; it must be made to appear that the employee whose act is in question has authority to perform the class of service to which the act belongs." (Syllabi of the court.)

When we examine the facts as known to us, together with all favorable inferences resolved in the plaintiffs' favor, it becomes readily apparent that the conduct in question occurred some time after and some distance from the place where the Christmas party was held and that any social or other contact between the employer and employee had ended when the party closed at midnight, December 19, 1980. No evidence appears that K & K required these persons to attend the Christmas party; but, more specifically, no evidence appears that there was any direction on the part of K & K that its personnel were to remain at the hotel after the party or engage in tortious acts. And, finally, there is no evidence of any subsequent ratification of their behavior by K & K. No other conclusion can be reached than the fact that what occurred was an independent, spontaneous act by the parties engaging in the altercation, was not within the normal activities of the employees, and certainly could not be said

to have been in furtherance of the business of K & K. On this basis one is left with the obvious: that no master-servant relationship existed at the time of the alleged tort.

Plaintiffs argue that whatever the situation may be, K & K was negligent in hiring and retaining employees known to have violent propensities. The applicable rule with regard to this matter appears to be as follows: "The master, in selecting an employee, must exercise a degree of care commensurate with the nature and danger of the business in which he is engaged and the nature and grade of service for which the servant is intended, but is required to hire employees possessing only such skill as is ordinarily and reasonably commensurate with the work to be performed by them." 57 C.J.S. *Master and Servant* § 559 at 271 (1948). The evidence discloses that the K & K personnel involved in this altercation were hired for purposes directly connected with the business of distributing the products of K & K. Based on this evidence, one could not say that they were unsuitable employees for the purpose for which they were originally hired or that K & K did not exercise ordinary and reasonable care in their selection. No rule of law requires the employer to search all records that exist to satisfy himself that an employee will not engage in conduct not allied with the purposes for which he was retained.

Where the facts present no conflict and furnish the basis for but a single inference, and that favorable to the master, his freedom from liability is to be determined by the court as a matter of law. 57 C.J.S., *supra* § 617. See, also, *Schwartz v. Riekes & Sons*, 195 Neb. 737, 240 N.W.2d 581 (1976); *Kessler v. Bates & Rogers Construction Co.*, 155 Neb. 40, 50 N.W.2d 553 (1951). As we reexamine this matter, we cannot but conclude that the facts present no conflict and lead but to a single inference. While the granting of a motion for summary judgment must be used with caution, it should not be necessary for a court to

submit an issue merely on the basis of speculation.

Having agreed with the trial court that no material facts exist requiring determination by the trier of fact, we affirm the judgment sustaining the motion and dismissing the petition as to K & K.

AFFIRMED.