JOHN V. HANCOCK, DOING BUSINESS AS JOHN HANCOCK CONSTRUCTION COMPANY, APPELLEE, V. LESLIE PARKS, APPELLANT.

110 N. W. 2d 69

Filed June 30, 1961. No. 34952.

*Lyle B. Gill,* for appellant.

*William G. Line,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

The plaintiff, John V. Hancock, doing business as John Hancock Construction Company, brought this action at law in the district court for Dodge County against Leslie Parks, defendant, seeking to recover on quantum meruit for the reasonable value of services rendered to the defendant. The jury returned a verdict finding in favor of the plaintiff and against the defendant, and assessed the amount of plaintiff's recovery in the sum of $1,000. Judgment was rendered on the verdict. The defendant filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. This motion was overruled.. Defendant perfected appeal to this court.

The plaintiff's petition, insofar as necessary to consider, alleged that at the special instance and request of the defendant, the plaintiff furnished services for the defendant commencing on August 26, 1958, using a caterpillar tractor and operator through September 4, 1958, a motor patrol and operator on September 12 and 13, 1958, and a caterpillar tractor and operator on October 17 and 18, and November 21, 1958; that the total

amount of services rendered amounted to $1,179; that this sum represented the reasonable and agreed value of the said services; that despite repeated demands for payment thereof more than 90 days prior to the institution of this action, no part of said sum had been paid except the sum of $100 on January 12, 1959, leaving a balance due of $1,079 which the plaintiff voluntarily reduced to $1,000; and that the plaintiff sought to recover no more than $1,000 with interest at 6 percent from February 22, 1959. The plaintiff also asked for attorney's fee to be taxed as costs by virtue of section 25-1801, R. R. S. 1943, and costs of suit.

The defendant, in his answer, alleged that he entered into a written contract with the plaintiff on June 16, 1958; that on June 28, 1958, he paid the plaintiff $1,000 on the contract; that on July 25, 1958, he paid the plaintiff $1,000 on the contract; that on January 12, 1959, he paid the plaintiff $500; that the items of work alleged to have been performed by the plaintiff relate to work to be performed under the written contract dated June 16, 1958; that the plaintiff failed to carry out the terms of the written contract and the plaintiff's neglect in doing so caused the defendant to employ other persons to complete the work as provided for in the contract; that nevertheless on January 12, 1959, defendant delivered to plaintiff his check in the sum of $500, mentioned above, which the plaintiff accepted and cashed; and that the plaintiff accepted and received said check in full satisfaction and discharge of any and all liability of the defendant to the plaintiff. The defendant's answer denied all allegations of the plaintiff's petition not admitted.

The plaintiff's reply admitted the written contract dated June 16, 1958, and the payments made thereunder; and denied that the work done by the plaintiff related to work under the written contract. The plaintiff denied that he failed to carry out the terms of the written contract, and denied that the check for $500 dated Janu-

ary 12, 1959, was in full satisfaction of the defendant's liability to the plaintiff. Other allegations of the defendant's answer were denied generally.

The record discloses that the plaintiff is in the contracting business; that between August 10 and 15, 1958, at the defendant's request, he went to see the defendant; and that the defendant wanted the plaintiff to do some work for him to make the water on the defendant's land go to the north before it went east, and to put in more dirt. The evidence further discloses that starting on August 26, 1958, to and including November 21, 1958, the plaintiff furnished a caterpillar tractor and operator, and a motor patrol and operator, working for the defendant a designated number of hours for a total amount of $1,179. The plaintiff testified that he was paid $100; and that he was reducing the balance of $1,079 to $1,000. The plaintiff further testified that he obtained dirt from a new cut-off ditch on the north side of the defendant's property, and hauled the dirt 3,000 to 4,000 feet; that there were between 1,500 and 2,000 cubic yards of dirt hauled; that he did other work for the defendant under a contract; that the defendant was going to build a trailer court on his land; that the plaintiff did the work called for under that written contract and was paid for it; and that this work was completed sometime in the first 10 days of July 1958.

On cross-examination the plaintiff testified that the job which was commenced in August was a "fill" job, to fill the area so the water would run to the western slope, to make it go west; that the dirt was put on the east side of the defendant's property line, which made the water flow west and north to the cut-off ditch; and that there was no discussion as to how long the job would take or what the cost would be.

A written contract dated June 16, 1958, which was admitted and designated exhibit No. 3, reads in part as follows: "John Hancock Const. Co. agrees to do the following work for the sum total of $2400.00. Dirt to be

hauled from the new ditch North 1/4th mile and East only. 1. Fill old creek bed with a slope to East of approx. 2′ from West rock road to East side of creek bed. 2. Fill front of building site .8 below pavement with slope of 1′ east and slope of 3′ North on West of East property line. 3. Grade to North property line from county road to approx. 250′ East. 4. Grade to be on person property only. 5. Finish fill areas. Payment to be made on day of completion." This contract was signed by the plaintiff and defendant.

The plaintiff further testified on cross-examination that he submitted the first bill to the defendant September 19, 1958, by handing it to him; that the defendant said that he did not have the money at that time; that he asked the defendant several times to pay the bill; and that he delivered a bill to the defendant around November 5, 1958, and asked the defendant if he could pay the bill. The defendant told the plaintiff that he did not have his Standard Oil loan through, and that when he got $500 for the old house he sold he would give that amount to the plaintiff.

The plaintiff's wife testified that she assisted the plaintiff in his business by taking care of the books and preparing the bills for the jobs the plaintiff was doing. She prepared the bills covering the period from August 26, 1958, until the completion of the work. This witness further testified that the timesheets of their employees are turned over to her, and show the work done for the defendant.

The testimony of a witness for the plaintiff who operates the machinery necessary to do the work corroborated the plaintiff's evidence relating to the work done by him from August 26, 1958, to and including the date of finishing the work.

The defendant testified to the physical characteristics of his property in June 1958; that at that time old Rawhide Creek was blocked off west of his property to the road, and new Rawhide Creek was built to bring fill

into the old creek; that the old creek came across the north end of the property approximately 50 feet to the east side then turned almost south, then turned again to the east; that the land from the north at that time drained into the old creek, and the other end of the property drained into the county road and came back around the creek; that regardless of the written contract or the plaintiff's alleged oral contract, there was some work done on his land after the plaintiff finished his work, because the defendant had to have some other dirt brought in which did not change the elevations except up on the land; and that there was no change in the layout of the tract. The defendant further testified that he had his first conversation with the plaintiff about doing some filling work on his land approximately the first of June 1958, and the plaintiff inspected the premises. The defendant further testified that at the time the work was being done under the written contract, he was living on the premises and had occasion to see the work done; that in September 1958, the plaintiff came on the land with a motor patrol to scrape or to level down some gumbo pieces he had dumped on the land; and that the plaintiff did not bring in any dirt to be put on the land in September, or after September 1958. The defendant denied that he ever received any bill from the plaintiff for any work done other than that which was agreed to in the written contract, and stated that he did pay the plaintiff $100 for taking out a tree. The defendant further testified that in August he called the plaintiff and asked him when he was going to get back to finish filling the creek. The plaintiff was working at the high school and said as soon as he finished that work he would come back and finish filling up the creek. The defendant further testified that no contract was ever discussed, for the reason that the plaintiff had contracted under the written contract to fill the old creek bed and it was the understanding that what he was to do after he was called in August 1958,

was to be a part of the old contract. Defendant also testified that during the month of December, he had no discussion with the plaintiff about anything, nor did he in August, October, or November 1958.

The defendant testified that on September 1, 1958, which was Labor Day, he did not see the plaintiff or his employee Goree do any work. A neighbor testified that all that day she saw no one working on the defendant's property. A witness testified that he hauled dirt for the defendant on September 2, 3, and 4, and did not see the plaintiff or his employee.

Another witness testified that he hauled dirt for the defendant on September 18, 1958, and leveled some gumbo piles on the defendant's land; that what he hauled was sandy dirt, and what was piled up was gumbo; and that there was no slope from west to east on the east side in September, instead there was deep water.

The record shows that the defendant repeatedly denied that he told the plaintiff he was waiting for a loan to come through, or that he borrowed any money in January 1959. Defendant did admit that on January 29, 1959, he borrowed $50,000, and that he borrowed $11,000 in October 1958.

The defendant assigns as error (1) that the trial court erred in overruling his motion at the conclusion of all of the testimony for a directed verdict on the ground that there was insufficient evidence to support a verdict in the plaintiff's favor; (2) that the trial court erred in refusing to allow defendant's attorney to cross-examine the plaintiff and Roy Goree about what work was done on the land under the written contract; (3) that the trial court erred in refusing to allow defendant's attorney to examine defendant about the work that was done under the written contract; (4) that the trial court erred in instructing the jury that the burden of proof was upon the defendant to show that any work performed by the plaintiff was performed under the June

16, 1958, contract; (5) that the trial court erred in failing to instruct the jury that the burden of proof was on the plaintiff to prove by clear and convincing evidence that the terms of the written contract were fulfilled or the work accepted by the defendant on July 7, 8, or 10, 1958; and (6) that the trial court erred in denying the defendant's motion for judgment notwithstanding the verdict or for a new trial.

The plaintiff asserts that the defendant's assignments of error Nos. 2, 3, and 5 are not reviewable for the reason that such matters were not called to the attention of the trial court in the defendant's motion for new trial.

In Robinson v. Meyer, 165 Neb. 706, 87 N. W. 2d 231, this court said: "For an error at law occurring at the trial to be considered by this court, the alleged error must be properly presented to the trial court and properly preserved, otherwise the defendant is ordinarily precluded from raising it on appeal."

It is a fundamental rule that an issue not presented and ruled on by the trial court will not be considered on appeal. Gatchell v. Henderson, 156 Neb. 1, 54 N. W. 2d 227; Reller v. Ankeny, 160 Neb. 47, 68 N. W. 2d 686.

In Robinson v. Meyer, *supra,* the court went on to say: "Assignments of error * * * (enumerating them) assert that the trial court erred in instructing the jury with reference to certain issues in the case. No instructions are specified as being erroneous in the motion for a new trial * * *. This court has repeatedly held that instructions not objected to in a motion for a new trial will not be reviewed in this court. Being a court of review, this court will consider on appeal such alleged errors as are properly preserved and submitted to this court. * * * This court has consistently held that errors of law occurring at the trial and not made grounds of a motion for a new trial will not be considered on appeal. * * * In State ex rel. Spillman v. Citizens State Bank, 115 Neb. 271, 212 N. W. 616, we said: 'In order

that "error of law occurring at the trial" may be considered by this court, it is necessary, under our uniform holding, that the district court's attention must have been called to the same by way of a motion for a new trial.' By failing to object to and preserve any error with respect thereto, the defendant is ordinarily precluded from raising it for the first time on appeal. As early as Creighton v. Newton, 5 Neb. 100, this court said: 'The rule is well settled that "before a party is entitled to be heard in this court, he must have exhausted his remedy in the court below." If he is dissatisfied with the verdict or judgment, he must by motion present the questions of law fairly and fully to the court below, * * *.' "

No such course has been taken by the defendant in the court below relating to the assignments of error heretofore mentioned. See, also, Schwank v. County of Platte, 152 Neb. 273, 40 N. W. 2d 863; Wabel v. Ross, 153 Neb. 236, 44 N. W. 2d 312; J. R. Watkins Co. v. Sorenson, 166 Neb. 364, 88 N. W. 2d 902.

Under the above authorities, the contention of the plaintiff is well taken.

The defendant, at the conclusion of the plaintiff's evidence, moved the court to direct a verdict in favor of the defendant for the reason that the plaintiff's evidence was insufficient to support a verdict. The same motion was made by the defendant at the close of all of the evidence.

A motion for a directed verdict or for a judgment notwithstanding the verdict admits, for the purposes of a decision of the motion, the truth of the material and relevant evidence on behalf of the party against whom the motion is directed, and he is entitled to have each controverted fact found in his favor and have the benefit of fair inferences deducible from the evidence. See Palmer v. McDonald, 171 Neb. 727, 107 N. W. 2d 655.

In Johnston v. Robertson, 171 Neb. 324, 106 N. W. 2d 192, this court said: "The function of this court, in

determining whether or not a verdict has been sustained or whether or not there is evidence sufficient for submission to a jury, is not to weigh evidence, but to ascertain whether or not there is evidence to sustain the verdict of a jury in the exercise of its function as the trier of the facts. * * * It is not the province of this court in reviewing the record in an action at law to resolve conflicts in or weigh the evidence. * * * It is presumed in an action at law that controverted facts were decided by the jury in favor of the successful party, and its finding based on conflicting evidence will not be disturbed unless clearly wrong. * * * Where different minds may draw different inferences or conclusions from the facts proved, or if there is a conflict in the evidence, the matter at issue must be submitted to the jury to be determined."

In Bosle v. Luebs, 169 Neb. 186, 98 N. W. 2d 795, this court said: "An action based on quantum meruit for labor and materials furnished is grounded upon an implied promise to pay the reasonable value thereof." See, also, Umberger v. Sankey, 154 Neb. 881, 50 N. W. 2d 346.

In Sorensen Constr. Co. v. Broyhill, 165 Neb. 397, 85 N. W. 2d 898, it was said: "There being no specific standard by which reasonable value of labor and materials furnished shall be proved, prima facie proof thereof is made where a reasonable inference of such value flows from the evidence adduced."

As said in In re Munro's Estate, 296 Mich. 80, 295 N. W. 567: "In proceeding to recover for personal services rendered decedent, plaintiff is not required to show nonpayment therefor since payment is an affirmative defense to be established by the executor."

The burden was not on the plaintiff to prove nonpayment of the obligation, and the burden of proving payment was an issue to be proved by the defendant in the trial of this case. See, Ashland Land & Live-Stock Co. v. May, 51 Neb. 474, 71 N. W. 67; Burke v. Munger, 138

Neb. 74, 292 N. W. 53; Washington v. Beselin, 141 Neb. 638, 4 N. W. 2d 753; Bosle v. Luebs, *supra.* The foregoing authorities relate to quantum meruit as applied to the facts in the instant case.

The plaintiff raises the proposition that by section 25-1801, R. R. S. 1943, he is entitled to have an attorney's fee allowed to be taxed as costs in this action. This statute deals with "Costs; interest; attorney's fees; recovery; claims of one thousand dollars or less."

The record shows that the plaintiff's wife prepared the following bills to be presented to the defendant. A bill dated September 19, 1958, for work done by the plaintiff for the defendant from August 26 to September 13, 1958, in the amount of $1,498; a bill dated November 1, 1958, for work done by the plaintiff for the defendant in the amount of $1,564; and another bill dated November 1, 1958, by mistake, which should have been dated December 1, 1958, for work done by the plaintiff for the defendant in the amount of $1,579.

The mere fact that the plaintiff pleaded in his petition that he reduced the amount owing by the defendant to him from $1,079 to $1,000, and testified to such fact, is not controlling.

Section 25-1801, R. R. S. 1943, provides in part: "Any person, * * * having a claim, which amounts to one thousand dollars or less, against any person, * * * for (1) services rendered, (2) labor done, (3) material furnished, * * * may present the same to such person, * * * for payment in any county where suit may be instituted for the collection of the same. If, at the expiration of ninety days after the presentation of such claim, the same has not been paid or satisfied, he may institute suit thereon in the proper court. If he shall establish his claim and secure judgment thereon, he shall be entitled to recover the full amount of such judgment and all costs of suit thereon, and, in addition thereto, interest on the amount of the claim at the rate of six per cent per annum from the date of presentation thereof,

and, if he has an attorney employed in the case, an amount for attorney fees as provided in this section."

In the light of the record, the plaintiff's claim for attorney's fee does not come within section 25-1801, R. R. S. 1943, and the plaintiff is not entitled to have an attorney's fee taxed as costs in his favor.

We deem it unnecessary to determine any other assignment of error set forth by the defendant.

We find no prejudicial error in the record, and affirm the judgment of the district court.

AFFIRMED.