FAYE TINNIN BARNES, APPELLEE, v. HARLAND S. MILLIGAN, APPELLANT, IMPLEADED WITH GLAIDETH FRANK ET AL., APPELLEES.

241 N. W. 2d 508

Filed April 28, 1976. No. 40384.

Michael V. Smith of Smith & King, for appellant.

Edmund Hollstein, for appellee Barnes.

Heard before WHITE, C. J., McCOWN, NEWTON, and BRODKEY, JJ., and KORTUM, District Judge.

McCOWN, J.

This is an action involving title to and possession of

certain ranch land lying between the boundary line described in conveyances, and a boundary fence erected and maintained for more than 10 years.

The plaintiff's original petition was an action for willful trespass and damages. The defendant Milligan's counterclaim asserted adverse possession of the disputed tract and prayed that title be quieted in him. Plaintiff's amended petition sought damages and delivery of possession. Both parties filed motions for summary judgment. The court overruled defendant's motion for summary judgment, granted plaintiff's motion, directed a survey to establish the legal boundary, ordered plaintiff to erect a fence along that boundary at her own expense, and dismissed defendant's counterclaim. The defendant Milligan has appealed.

The disputed land here, together with land to the east and west of it, had been a part of the Tinnin ranch in Sheridan County at one time. Another large ranch, known as the Modisett ranch, adjoined the Tinnin ranch on the east. The Modisett ranch was owned by Stansbie and Engel Company, a corporation formed by Chris and LeRoy Abbott. In 1944, Stansbie and Engel acquired a one-third interest in the Tinnin ranch. The plaintiff in this action, who owned a two-thirds interest in the Tinnin ranch then, filed a partition action in federal court. On June 5, 1951, that partition action was settled by agreement approved by the court, and the Tinnin ranch was divided so that the plaintiff received the western part of the Tinnin ranch and Stansbie and Engel Company received the eastern part of the ranch, which adjoined the Modisett ranch. The agreement was confirmed by deeds executed by the former joint owners to each other.

Chris Abbott and the plaintiff could not agree on the fencing of the new common border, which was not surveyed or fenced. Sometime thereafter prior to his death in 1954, Chris Abbott arbitrarily installed a fence on the northerly portion of the west side of the disputed

area. That fence connected to the north end of an existing fence which extended for some distance along the west boundary of Sections 15 and 22. At about the same time an employee of plaintiff installed a fence from the south end of the old fence in Section 22 and thence southeasterly to a point just east of the center of Section 27, where it tied into an existing east-west fence. The critical fence, including the portions erected by plaintiff and defendant's predecessors with the old fence in the middle, covered a distance of about 2½ miles and has remained in that exact location ever since the middle 1950's. There was no fence along the actual boundary line, and the disputed area includes approximately 1,000 acres.

In sustaining plaintiff's motion for summary judgment the court relied upon documents, admissions, and answers to interrogatories, together with depositions of various witnesses. In its memorandum opinion the District Court specifically found that the defendant and his predecessors in title had been in exclusive continuous possession of the land since the mid-1950's, and during all that time had used the land for the purposes for which it was suited. However, the court found that the defendant had not proved that such exclusive possession and use was "under a claim of ownership." The court determined that the possession and use was not under a claim of ownership on the basis of a statement in one of the depositions that at the time Chris Abbott commenced construction of the northern portion of the fence he stated to the witness that he was going to build the fence over to the school section land and "I can pay that old lady rent on this land just like anybody else." The court accepted the witness' statement in the deposition as an established uncontradicted fact. There was, however, evidence in a deposition from another witness that the fence was a temporary fence, and that Mr. Abbott at no time said anything to him about leasing the land from the plaintiff. There is no evidence that

plaintiff ever leased the land to defendant's predecessors, nor even discussed it. There is no evidence that she ever gave them permission to use any of her land, nor that they ever asked it.

Not only was there a genuine issue as to a material fact or facts in this case, but the ultimate inferences to be drawn from uncontradicted facts were neither clear nor without dispute. The basic factual issue here was whether the defendant's possession was hostile and therefore adverse, or whether it was permissive. The evidence on that issue is clearly contradictory.

In Green v. Village of Terrytown, 189 Neb. 615, 204 N. W. 2d 152, we said: "The moving party is not entitled to summary judgment except where there exists no genuine issue as to any material fact in the case and where under the facts he is entitled to judgment as a matter of law." In that case we held that even though there were no conflicting evidentiary facts, where the ultimate inferences to be drawn from the facts are not clear, the inferences are not conclusively established, and it cannot be determined whether the defendant is entitled to judgment as a matter of law.

Summary judgment is an extreme remedy and should be awarded only when the issue is clear beyond all doubt. Any reasonable doubt touching the existence of a material issue of fact must be resolved against the moving party. The requirements to sustain a motion for summary judgment are the same whether one party or both parties have moved for summary judgment. Hiram Scott College v. Insurance Co. of North America, 187 Neb. 290, 188 N. W. 2d 688.

The memorandum opinion establishes that the District Court found that the possession by the defendant and his predecessors was actual, continuous, open, exclusive, and notorious, but that it was not hostile or adverse. In Hallowell v. Borchers, 150 Neb. 322, 34 N. W. 2d 404, this court discussed the issues of intention and hostility in determining whether possession was adverse. See,

also, III American Law of Property, § 15.4a, p. 772. Other authorities also reflect the view that adverse possession and use is simply the opposite of permissive possession and use. Where the use is not with the permission of the owner, it may be regarded as adverse.

The District Court in weighing the evidence placed the burden on the defendant of establishing that his exclusive possession and use was under a "claim of ownership." 3 Am. Jur. 2d, Adverse Possession, § 96, p. 177, states: "Terms such as 'claim of right,' 'claim of title,' and 'claim of ownership,' when used in this connection, mean nothing more than the intention of the disseisor to appropriate and use the land as his own to the exclusion of all others, irrespective of any semblance or shadow of actual title or right. * * * Thus, 'claim of right' means no more than 'hostile' and if possession is hostile it is 'under a claim of right.' "

In Purdum v. Sherman, 163 Neb. 889, 81 N. W. 2d 331, this court said: "Adverse possession is founded upon the intent with which the occupant has held possession and this intent can best be determined by his acts in relation thereto. * * * The real purpose of prescribing the manner in which an adverse holding will be manifested is to give notice to the real owner that his title or ownership is in danger so that he may within the period of limitation take action to protect his interest. It is the nature of the hostile possession that constitutes the warning, not the intent of the claimant when he takes possession. When, therefore, a claimant occupies the land of another by actual, open, exclusive, and continuous possession, the owner is placed on notice that his ownership is endangered and unless he takes proper action within 10 years to protect himself, he is barred from action thereafter and the title of the claimant is complete."

Upon a motion for summary judgment the court examines the evidence, not to decide any issue of fact, but to discover if any real issue of fact exists. Johnson v.

Metropolitan Utilities Dist., 176 Neb. 276, 125 N. W. 2d 708. On the basis of the record here, substantial material facts are in dispute and the ultimate inferences to be drawn from uncontroverted facts are not clear and conclusive. The record fails to establish the plaintiff's right to judgment as a matter of law and the facts and inferences are not subject to determination upon a motion for summary judgment. The judgment is reversed and the cause remanded to the District Court for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.