VALENTINE PRODUCTION CREDIT ASSOCIATION, APPELLEE, v. SPENCER FOODS, INC., A DELAWARE CORPORATION, APPELLANT.

241 N. W. 2d 541

Filed May 5, 1976. No. 40420.

William K. Schaphorst of Swarr, May, Smith & Andersen, for appellant.

James T. Gleason of Collins & Gleason, for appellee.

Heard before SPENCER, NEWTON, and BRODKEY, JJ., and COLWELL and BLUE, District Judges.

COLWELL, District Judge.

This is an appeal from summary judgment. Suit was brought for conversion of 63 head of cattle subject to a

security agreement in favor of plaintiff, Valentine Production Credit Association. The owner of the cattle, Fud Ferris, Jr., sold them to defendant, Spencer Foods, Inc., a meat packer, on April 1, 1971, for $19,839.51. Plaintiff claims the proceeds of that sale were not applied to its security debt and it now has an interest in the proceeds. Ferris is insolvent. Plaintiff's petition was filed March 27, 1974. Defendant's answer alleges payment; waiver; irregular, unlawful, and negligent conduct of plaintiff and its employees; fraud; laches; and unreasonable delay. Summary judgment was entered in favor of plaintiff for $19,839.51. Defendant appeals.

Fud Ferris, Jr., Valentine, Nebraska, secured credit from plaintiff beginning March 1970, for a cattle feeding operation that contemplated buying and selling cattle at irregular times. Ferris gave a financial statement showing a net worth of $240,650. The recorded security agreement, dated May 8, 1970, recited that the security was for 900 head of steers and heifers covering a $150,000 debt. The agreement included an after acquired property clause and, in part, recited that "the Secured Party claims and has a security interest in the proceeds of the collateral if, under the Uniform Commercial Code of the State of Nebraska, a buyer in the ordinary course of business (other than a person buying farm products from a person engaged in farming operations) may purchase the collateral herein described free of this security interest. Except for this latter provision of the Uniform Commercial Code, the Debtor is not otherwise authorized to sell, exchange, or otherwise dispose of the collateral." There were 15 separate advancements of funds, the last made 40 days after the sale being $40,000 on May 12, 1971, for a gross total loan of $296,764.71. Thirty-one repayments were made on the loan up to October 1971, including $72,000 repaid after the sale to defendant. There is no evidence identifying or explaining the source of the repaid funds. As

a business custom plaintiff permitted Ferris and other borrowers to sell secured cattle, however, the proceeds of sales were to be repaid to plaintiff. Plaintiff discovered on June 12, 1972, that all its Ferris collateral was gone and he was insolvent.

Ferris conducted all his loan business with Don Fisher, plaintiff's manager. Plaintiff admits many negligent and improper acts of Fisher in advancing funds to Ferris contrary to his authority and its established office practices, failing to verify the existence of the cattle designated as security, and Fisher borrowed $2,500 from Ferris contrary to plaintiff's regulations. Fisher died May 9, 1972.

The business records of plaintiff are incomplete, illegible, and unexplained. The testimony of Ferris has not been secured.

Plaintiff (appellee) contends that defendant failed to file a timely motion for new trial. Section 25-1143, R. R. S. 1943, provides: "The application for a new trial must be made, within ten days, * * * after the verdict, report or decision was *rendered* * * *." (Emphasis supplied.) Section 25-1301, R. R. S. 1943, provides in part: "(1) A judgment is the *final determination* of the rights of the parties in an action. (2) *Rendition* of a judgment is the act of the court, or a judge thereof, in *pronouncing judgment*, accompanied by the making of a notation on the trial docket, or one made at the direction of the court or judge thereof, of the *relief granted or denied* in an action." (Emphasis supplied.)

"No judgment is rendered until the pronouncement thereof is noted on the trial docket." Fritch v. Fritch, 191 Neb. 29, 213 N. W. 2d 445.

Both parties filed motions for summary judgment which were heard on August 29, 1975. On September 24, 1975, the trial judge issued a memorandum finding that the plaintiff's motion for summary judgment should be granted without stating the relief granted and directing the plaintiff to prepare a journal entry. The

record is silent whether or not a notation was made on the trial docket. A formal judgment was signed by the trial judge and filed October 1, 1975, granting judgment for plaintiff against defendant for $19,839.51, and denying defendant's motion for summary judgment. Defendant filed its motion for new trial on October 9, 1975.

Plaintiff's objection is without merit. The memorandum of the trial court did not state the relief granted, and the record fails to show that there was a notation made on the trial docket of the relief granted that was later entered by the former judgment filed October 1, 1975. Defendant's motion for new trial was timely filed.

The procedure in summary judgment is found in sections 25-1330 to 25-1336, R. R. S. 1943. "The issue to be tried on a motion for summary judgment is whether or not there is a genuine issue as to any material fact, and not how that issue should be determined. In considering such a motion as in a motion for a directed verdict, the court should take that view of the evidence most favorable to the party against whom it is directed, giving to that party the benefit of all favorable inferences that may reasonably be drawn from the evidence. If, when so viewed, reasonable men might reach different conclusions, the motion should be denied and the case tried on its merits." Illian v. McManaman, 156 Neb. 12, 54 N. W. 2d 244.

Plaintiff and the trial court rely on Garden City Production Credit Assn. v. Lannan, 186 Neb. 668, 186 N. W. 2d 99, as authority for the judgment. In Garden, the borrower made periodic sales without obtaining the required written consent and paid the proceeds to Garden; the sale there involved a middleman whose draft endorsed to Garden was dishonored and not paid; Garden did not object to the sale when the draft was presented; and Lannan was an ultimate purchaser in due course claiming waiver. The trial court held that the evidence of the prior conduct of the parties and the

failure of Garden to object to the sale of the collateral was not an implied waiver. We there said: "It is difficult to see, *either considering the purpose of the code, or examining the intent of P.C.A. and Carter in their course of their dealing, that there was any intention, either express or implied on the part of P.C.A. to waive its security interest* up to the point of acceptance and actual application of the proceeds of the sale. * * * section 1-205, U. C. C., provides that a course of dealing which by previous conduct between the parties, may alter an agreement by fact recognition. But, as we have said, we fail to see how a failure to rebuke or object contemporaneous with a delivery by the debtor and acceptance of the proceeds to which the security agreement attaches, can be construed as a voluntary and intelligent waiver by the lender of its right under a perfected security agreement against a third party purchaser, and this is particularly true when the security agreement itself provides a specific means for obtaining such waiver. * * * Our decision herein is in harmony with the general rule that in order to establish a waiver of legal right there must be a clear, unequivocal and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his part. 28 Am. Jur. 2d, Estoppel and Waiver, § 158, P. 842; Jessen v. Blackard, 159 Neb. 103, 65 N. W. 2d 345." (Emphasis supplied.)

The Garden case does not control here for three reasons: (1) This is an appeal from a summary judgment where the limited issue is whether or not there is a genuine issue of fact remaining for trial; (2) there are different and broader material fact questions, both before and after the sale, relating to the ultimate fact of a voluntary and intentional relinquishment or abandonment of a known existing legal right; and (3) there are other issues and material fact questions presented by the pleadings and the record such as payment, estoppel, fraud, and delay all as contemplated by sections 1-103

and 9-306(2), U. C. C., that require presentation and determination by the trial process.

From an examination of the record and for the reasons stated we conclude that there are genuine issues of material fact to be determined on trial. The summary judgment is set aside and the cause remanded for further proceedings.

REVERSED AND REMANDED.