H. W. McDowell et al., Appellees, v. Rural
Water District No. 2, Boyd County, Nebraska, a
Public Corporation, Appellant.

282 N. W. 2d 594

Filed August 21, 1979. No. 42331.

James L. Sedgwick and Steven G. Seglin of Crosby, Guenzel, Davis, Kessner & Kuester, for appellant.

William W. Griffin and George C. Rozmarin of Swarr, May, Smith & Andersen, for appellees.

Heard before Krivosha, C. J., McCown, Brodkey, and Hastings, JJ., and Stuart, District Judge.

Brodkey, J.

All the plaintiffs are persons owning real property in Holt County, Nebraska, who have brought this ac-

tion for declaratory and injunctive relief against the defendant, a rural water district organized pursuant to the provisions of sections 46-1001 to 46-1026, R. R. S. 1943, located in Boyd County, Nebraska. The district owns land located in Holt County, Nebraska, in the general vicinity of the property owned by the plaintiffs. In their petition filed in the District Court for Holt County, plaintiffs, after alleging the status of the respective parties, allege that defendant has constructed a well and a water distribution system upon its property in Holt County for the purpose of withdrawing substantial amounts of ground water from beneath its property in Holt County and for transporting it off that land for use in Boyd County; and that the ground water will be withdrawn from an acquifer which extends under the land owned by the plaintiffs. Plaintiffs further allege in their petition that such withdrawals of ground water will result in a serious depletion and shortage of ground water supply available to plaintiffs for irrigation and domestic use, and that the injury and damage to plaintiffs is irreparable. Plaintiffs further allege that defendant's intended withdrawal and use of ground water located under its land in Holt County is in violation of the American rule of reasonable use because the use will not be on the overlying land, and further is in violation of the law of Nebraska prohibiting the transportation of waters from one watershed to another watershed. Plaintiffs pray that the court declare defendant's intended withdrawal and use of the ground water is unlawful, and permanently enjoin the defendant from such withdrawal and use.

In its answer and counterclaim filed in the action, the defendant admits that it is a public corporation organized under the provisions of the Rural Water District Act and owns land located in Holt County, and alleges that it has drilled test holes on its property and intends to construct two water supply wells on the property and a water distribution system in

order to transport the water to Boyd County for use of residents of Boyd County who are without adequate water supplies for domestic purposes. Defendant also alleges there is sufficient ground water for plaintiffs' continued use and also for the use of the defendant, but that even if there is insufficient ground water for that purpose, defendant has priority under section 46-613, R. R. S. 1943, since its intended use is for domestic purposes while the plaintiffs' use is primarily for irrigation. Defendant further alleges the American rule of reasonable use is not applicable to the facts in the case at bar, since there is sufficient water for both plaintiffs and the defendant; and further alleges the intended use by the defendant is within the same water basin as the source of the ground water. Defendant finally alleges that plaintiffs have an adequate remedy at law, and that plaintiffs have not and will not in the future suffer any cognizable injury or damage.

Plaintiffs thereafter filed a motion for a summary judgment requesting the court to grant the prayer set forth in their petition based upon the pleadings, answers to interrogatories, and an affidavit attached to the motion, for the following reasons: "1. There are no genuine issues of material fact. 2. Defendant's actions will be illegal per se under the reasonable use doctrine as adopted by the Supreme Court of Nebraska. 3. Defendant's actions will be illegal per se as a transbasin diversion. 4. As raised in their Reply, Defendant fails to state a cause of action in its counterclaim upon which relief may be granted. * * * In the alternative, Plaintiffs move the Court for a partial Summary Judgment declaring Defendant's actions to be unreasonable per se under the reasonable use doctrine as adopted by the Supreme Court of Nebraska." At the hearing on the motion for summary judgment, there was also introduced in evidence an affidavit of Carl Nuzman, a consulting engineer and expert in ground water

hydrology, employed by the plaintiffs, to the effect that the proposed movement of water by the defendant from Holt County into Boyd County will result in movement of water within the same general watershed area. However, there was also introduced in evidence at the hearing an affidavit from Ralph Marlette from the Department of Civil Engineering of the University of Nebraska-Lincoln, whose specialty was in the area of river engineering and ground water hydrology, who was also retained to consult with and appear as an expert witness on behalf of the plaintiffs in this case, and he stated in his affidavit: "That the proposed movement of water by defendant from Holt County into Boyd County will result in movement of water from the Niobrara River Watershed into the Ponca Creek Watershed, each of which is independent of one another and flows into the Missouri river." It is obvious that the affidavits of the above two experts, both employed by the plaintiffs, were in direct contradiction to each other on the issue of transbasin diversion.

Defendant contends, however, that the trial judge, on his own motion and without notice, raised a new issue at the hearing on summary judgment as to whether the Rural Water District was required to obtain a permit under the City, Village and Municipal Corporation Ground Water Permit Act, sections 46-638 to 46-650, R. R. S. 1943, before it could withdraw and transport ground water off its land in Holt County to its patrons in Boyd County; and that if it had had notice that the trial judge was raising the issue of whether it needed a permit in accordance with that act, it would have introduced evidence at the hearing pertinent to that issue. We must therefore examine the record in this case to determine upon what basis or for what reason the court sustained plaintiffs' motion for a summary judgment.

The order of the court, entered on August 28, 1978, provides, in pertinent part, as follows: "The matter

was heard, and the same submitted, and the Court being advised finds from the pleadings and the evidence and taking judicial notice of the provisions of Sections 46-638 through 46-655, R. S. Nebr. 1943, Reissue 1974, that the Defendant's well is illegal, and that the Plaintiff's Motion should be granted.

"IT IS THEREFORE ORDERED that Defendant should be, and it is hereby enjoined permanently from the exportation of groundwater from and for use off of the Defendant's land located in Holt County, Nebraska, until application is made and permit granted by the Director of Water Resources of the State of Nebraska, authorizing such action." The language of the order itself, therefore, would seem to support defendant's contention that the court's reason in sustaining plaintiffs' motion for a summary judgment for injunctive relief was based on the fact that it felt the defendant's well or wells were illegal because of the fact a permit had not been obtained. The bill of exceptions covering the hearing on the motion for summary judgment is enlightening in this regard, especially the comments of the trial judge evidencing his reasoning, and also the colloquy between counsel and the court at that time; and we quote certain pertinent portions thereof.

The record reveals that early in the hearing on the motion for summary judgment, the trial court stated: "Before we get into extended dissertation on the merits of this case, I am concerned about the question raised on the last page of the brief of Mr. Griffin and Mr. Rozmarin that states simply, 'Secondly, even if defendant could properly raise the issue as pleaded, it must at least exhaust administrative remedies available with the Natural Resources District, in whom the Legislature placed authority under the Groundwater Management Act of 1975.' I note from reading all of the cases cited with reference to water, they arise by reason of application made to the old Department of Roads and Irrigation,

and more recently an application made to the director of water resources. He makes the determination of whether or not to issue a permit, and it is appealed from there to the Supreme Court. There is nothing in the pleadings to indicate that any procedure seeking authority to drill a well anywhere was ever made by the Rural Water District No. 2 of Boyd County, Nebraska. MR. SEGLIN: That is correct, Your Honor. THE COURT: Nowhere. Well, I note from reading your empowering statutes that at least you must have sought the approval of the director of water resources and the Department of Health. This, in forming your district. MR. SEGLIN: Yes. THE COURT: Was that done? MR. SEGLIN: Yes. THE COURT: All right. Sections 46-638 through 46-655 provide for the procedure of municipal water suppliers to obtain a license or permit from the Department of Water Resources, and this district would, under the general definitions of municipal corporations, seem to be a municipal corporation. MR. SEGLIN: I disagree with that, Your Honor. THE COURT: I know you might well disagree with it, but it is a municipal — it is a subdivision of the state, and generally in the — its general authority is as a municipal corporation, and these are my concerns before we reach the general merits of the case that you discussed at an extended length, and I am not sure that you have it — that it is properly before me on the merits of the case, and it should have been developed by a hearing on application for permit, and I also note in the section which provides the authority for a rural water district, that their condemnation power is limited to land within the district, which would indicate they could not have condemned land outside the district for purpose of production of water. MR. SEGLIN: That is correct, Your Honor. The land was not condemned; it was purchased. * * * THE COURT: That is my problem from reading your briefs and searching through

the statutes that deal with this case, and reading most of the cases that you have cited to me, and all of the cases that are of any substance that you cite to me arise by reason of an application made to the present Department of Water Resources, and formerly to the Department of Roads and Irrigation, which supervised the statutory procedures before that time, and I think this is entirely a proper matter to resolve on a motion for summary judgment. MR. SEGLIN: Your Honor, for the record, I may point out that those points that you are raising were not raised in the plaintiff's petition, nor challenged by the plaintiffs, and accordingly — THE COURT: Well, you assert a right to do these things in your answer, and I wonder where that right develops from? MR. SEGLIN: That right, Your Honor, develops from the statute. The statute gives the district, as pointed out in the district's brief, certain rights to do things. It is our contention that it is not necessary to obtain a permit like municipalities do, since we are not under that statute. THE COURT: You are not a municipal corporation? MR. SEGLIN: Well, we are a political subdivision, but we are governed by a specific statute which authorizes — the sole purpose that a rural water district has is to bring water to people that do not have water. Now, it seems to me that the legislature carved that out as a specific purpose and authority for a rural water district, and municipalities, of course, can do many things." The court also stated: "And, of course, by the reading of that statute, it applies to any entity that attempts to drill a well in a district formed under the Groundwater Control Act, and that would definitely apply to a rural water district, or anyone.

"So, I am finding that it is — that the rural water district has failed to avail itself of the necessary permits to be pumping water from the tract of land described in the petition of the plaintiffs, and the Court does enjoin pumping until proper permits are ob-

tained. MR. SEGLIN: Your Honor, is that the permit under that one section of the statute that you mentioned? THE COURT: Under the municipalities. That is the one I find applies. This is not within a district — groundwater control district, so those sections would not apply; but this is a governmental subdivision developed to provide water, and must have a permit issued by the Department of Rural Water Resources before it can pump water from this land. MR. SEGLIN: Your Honor, is that your final decision that you are entering in this court? THE COURT: Yes, that is the order of this Court. I think I should clarify that by further finding that the well is an illegal well, and therefore enjoined. MR. SEGLIN: Your Honor, might I inquire as to illegal in what respect? THE COURT: It is beyond domestic uses on the land and requires a permit, and therefore it is an illegal well under the terms of the statute. * * * MR. SEGLIN: On behalf of the defendant, I would move at this time that you set your order aside on the basis that the defendant has not had an opportunity to brief that issue for the Court, and the issue is not, at this time, properly before the Court on a motion raised by the plaintiffs. * * * We have not had an opportunity to be heard on that issue. The Court raising it on its own motion took the defendant by complete surprise. We did not have the opportunity to brief the matter.'' The court overruled defendant's motion.

Subsequently, at the hearing on defendant's motion for a new trial, Mr. Sedgwick, who, along with Mr. Seglin, were attorneys for the defendant, stated as follows: ''The Court's earlier order found that the well of the defendant was illegal due to the fact that a permit had not been applied for or obtained from the Department of Water Resources, pursuant to 46-638 and the statutes that follow. In light of the Court's ruling, we would ask the Court to reconsider three aspects of the Court's decision. We recognize

the wide discretion granted to the Court; but we feel that a fairer procedure should have been to permit the defendants the opportunity to brief and argue the point raised by the Court, since it had not been previously raised by the parties. The second point we would ask the Court to take a look at is to consider that the act is not applicable to a municipal corporation, unless that municipal corporation supplies water to cities and villages, and there was no evidence that the defendant is supplying water to cities and villages. The third point was that if the Court feels that the act is applicable to the defendant, we would suggest that the act is not a mandatory act but a discretionary act. The statute talks about an applicant which desires to avail itself of the act, and therefore, failure to follow the act would not make the defendant's well illegal. * * * THE COURT: I am not opposed to giving you some time to brief this thing. Now, I did read the entire water resources statute, and my impression from it was that, especially if you are going outside the territorial limits of your district, you are a municipality, and it is intended that that statute apply to municipalities."

It seems clear from a reading of the above-quoted portions of the hearings on the motion for summary judgment that the court decided the issue primarily, if not entirely, on the basis that the defendant was required to obtain a permit before digging its well on its own property in Holt County. Nowhere in the record does it appear that the court discussed, ruled upon, or found that there were no genuine issues of material facts present in the case. The final order of the court on the motion for rehearing, as set out above, merely finds that the defendant's well is illegal, but no finding is made thereon with reference to whether the evidence or facts necessary to prove such illegality might not be in dispute, and thus require a trial before the finder of facts to determine

that issue. The rules relating to the issuance of summary judgments have often been considered and are well settled in this jurisdiction. They are well summarized in Reeves v. Associates Financial Services Co., Inc., 197 Neb. 107, 247 N. W. 2d 434 (1976), where we stated: "The rules as to summary judgments are well-established in this jurisdiction. 'The moving party is not entitled to summary judgment except where there exists no genuine issue as to any material fact in the case and where under the facts he is entitled to judgment as a matter of law.' Green v. Village of Terrytown, 189 Neb. 615, 204 N. W. 2d 152 (1973). The issue on a motion for summary judgment is whether or not there is a genuine issue as to any material fact, and not how that issue should be determined. In considering such a motion, the trial court must take that view of the evidence most favorable to the party against whom summary judgment is directed, giving to that party the benefit of all favorable inferences that may reasonably be drawn from the evidence. Valentine Production Credit Assn. v. Spencer Foods, Inc., 196 Neb. 119, 241 N. W. 2d 541 (1976); Farmland Service Coop., Inc. v. Klein, 196 Neb. 538, 244 N. W. 2d 86 (1976). This court has stated that summary judgment is not appropriate even where there are no conflicting evidentiary facts if the ultimate inferences to be drawn from those facts are not clear. Barnes v. Milligan, 196 Neb. 50, 241 N. W. 2d 508 (1976). Thus, 'Summary judgment is an extreme remedy and should be awarded only when the issue is clear beyond all doubt.' Barnes v. Milligan, *supra*, at p. 53."

A review of the record in this case convinces us that under the issues of this case, as framed by the pleadings of the parties, there exist genuine issues of material facts. An obvious example is on the issue of whether there has been or will be a transbasin diversion of water, an issue raised by the plaintiffs,

where the two expert witnesses employed by the plaintiffs apparently hold diametrically opposing views on that issue, as exemplified by their affidavits in the record. Other fact questions subject to dispute between the parties will undoubtedly be the amount of the water supply in the aquifer underlying the land owned by the plaintiffs and the defendant in Holt County; and there are also fact issues, not presently resolved by the record, relating to the right of the Rural Water District to appropriate and put to good use the water lying beneath its land, and whether the plaintiffs will experience any harm or damage as a result of the Rural Water District's use of the water. These, and other issues, must be resolved factually, as well as legally, on a remand of this case to the District Court for trial on the merits.

Since the trial court apparently placed much emphasis and reliance upon the proposition that the defendant was required to first obtain a permit before digging its wells, and that therefore the wells in question were illegal wells and must be enjoined, we believe it will be helpful and desirable for us to comment briefly upon this issue. At the outset, we note that the Rural Water District Act, under which defendant was organized, being sections 46-1001 to 46-1026, R. R. S. 1943, nowhere required the District to obtain a permit to dig wells for the purpose of supplying water to its patrons in need thereof, and, in fact, specifically authorizes the transportation of water into the District for that purpose. § 46-1003, R. R. S. 1943. Plaintiffs argue, however, that notwithstanding this fact the defendant was obligated to obtain such a permit under the provisions of the "City, Village and Municipal Corporation Ground Water Permit Act." §§ 46-638 to 46-650, R. R. S. 1943.

Even assuming it is mandatory under that act to apply for and obtain a permit, we do not believe that a rural water district is a city, village, or municipal corporation within the purview of that act which sets

up the purpose, and the procedure to be employed, in forming such a district. While a rural water district may well be a public corporation, our court has recognized the distinction between them. In Bliss v. Pathfinder Irrigation District, 122 Neb. 203, 240 N. W. 291 (1932), we stated: "Corporations are generally classed as public and private. While a municipality is a public corporation, it does not follow that every public corporation is a municipality. In 1 Dillon, Municipal Corporations (5th ed.) 58, sec. 31, the term 'municipal corporation' is defined as follows: 'A *municipal corporation*, in its strict and proper sense, is the body politic and corporate constituted by the incorporation of the inhabitants of the city or town for the purposes of local government thereof. Municipal corporations as they exist in this country are bodies politic and corporate of the general character above described, established by law partly as an agency of the state to assist in the civil government of the country, but chiefly to regulate and administer the local or internal affairs of the city, town, or district which is incorporated.' A like definition is found in 43 C. J. 65, and in the same volume, at page 72, we find the following with respect to public corporations: 'Public corporations are all those created specially for public purposes as instruments or agencies to increase the efficiency of government, supply public wants, and promote the public welfare. Public corporations are classified as municipal, quasi-municipal, and public-quasi corporations. Public corporations include not only municipal corporations, but also all other incorporated agencies of government of whatever size and form or degree of organization. While all municipal corporations are public corporations, all public corporations are not municipal corporations.'

"In 43 C. J. 73, it is said: 'There is a want of harmony in the decisions relating to what local subdivisions are embraced by the phrase "municipal

corporations." There are many public bodies which are not corporations in the full sense but resemble them in that they have some of the attributes of a corporation, and which are therefore called quasi corporations. Some of these are almost perfect in their organization and scarcely distinguishable from municipal corporations. Others represent the lowest order of corporate life, with few powers and imperfect organization. Between these two extremes are a large number of districts erected as agencies of government, of diverse names and objects, with varying degrees of organization; sometimes styled political, sometimes public, sometimes civil; including counties, towns, townships, school districts, drainage districts, highway districts, improvement districts, hospital districts, irrigation districts * * * and all other sections of territory delimited and organized for the performance of certain governmental functions; * * * such bodies are not "municipal corporations" or "municipalities" in the proper sense.' " *Id.* at p. 205-206.

While we have never specifically passed upon the status of a water district in this state, we have on numerous occasions made such a determination with respect to irrigation districts. In Loup County v. Rumbaugh, 151 Neb. 563, 38 N. W. 2d 745 (1949), we stated: " 'Irrigation districts organized under our laws are public, rather than municipal corporations, and their officers are public agents of the state.' Board of Directors of Alfalfa Irrigation District v. Collins, 46 Neb. 411, 64 N. W. 1086; Lincoln & Dawson County Irrigation District v. McNeal, 60 Neb. 613, 83 N. W. 847; Platte Valley Public Power & Irrigation District v. County of Lincoln, 144 Neb. 584, 14 N. W. 2d 202, 155 A. L. R. 412; Draver v. Greenshields and Everest Co., *supra*; Elliott v. Calamus Irrigation District, *supra*." By analogy, we hold that a rural water district is not a municipal corporation as used in the act, even though it may be a

public corporation, and therefore the requirements of the act are not applicable, at least so far as any mandatory requirement that a permit be obtained.

In view of what we have stated above, we reverse the decision of the District Court, and remand the matter for a trial on the merits.

REVERSED AND REMANDED.