THE METROPOLITAN TECHNICAL COMMUNITY COLLEGE AREA, A TECHNICAL COMMUNITY COLLEGE AREA, APPELLANT, V. SOUTH OMAHA INDUSTRIAL PARK DEVELOPMENT CORPORATION, A NONPROFIT CORPORATION, AND OMAHA INDUSTRIAL FOUNDATION, A NONPROFIT CORPORATION, APPELLEES.

299 N.W.2d 535

Filed December 12, 1980.   No. 43108.

William Jay Riley of Fitzgerald, Brown, Leahy, Strom, Schorr, & Barmettler for appellant.

Neil B. Danberg, Jr., of Kennedy, Holland, DeLacy & Svoboda for appellees.

Heard before KRIVOSHA, C.J., McCOWN, and WHITE, JJ., and COLWELL and HUBER, District Judges.

KRIVOSHA, C.J.

This is an appeal from a judgment entered by the District Court for Douglas County, Nebraska, sustaining a motion for summary judgment filed by one of the appellees herein, Omaha Industrial Foundation, a nonprofit corporation (OIF). Several assignments of error are made by the appellant, the Metropolitan Technical Community College Area (Metro Tech). For purposes of this appeal, however, we need only consider whether a genuine issue as to a material fact existed. If such an issue existed, the trial court erred in granting the motion for summary judgment. Our review of the case convinces us that a genuine issue as to a material fact did exist and that the trial court, therefore, was in error in granting the motion for summary judgment. Therefore, we reverse and remand.

Shortly after its formation in April of 1974, Metro Tech began looking for campus sites in the Omaha, Nebraska, metropolitan area. Metro Tech chose as a first priority a campus in South Omaha. At that time, one of the appellees herein, South Omaha Industrial Park Development Corporation (South Omaha Corp.), was offering land for sale in an industrial park located in South Omaha. OIF served as the sales agent for South Omaha Corp. The particular tract in question was a part of what was once Omaha's thriving stockyards and meatpacking industry and which was, in the late 1960's, idled and abandoned.

South Omaha Corp., with funds raised from private sources, including individuals, businesses, and banks, purchased a tract of land on the site of the old stockyards, immediately to the west of the South Omaha business district. Following the purchase of the real

estate, the U.S. Department of Commerce awarded the city of Omaha a federal redevelopment grant to create a 106-acre industrial park.

The engineer selected to design the industrial park was the Leo A. Daly Company. According to Mr. Ed Cambridge, an employee of the Daly Company, the purpose of the project, after the land was acquired, was to clear and grade the land and install utilities and streets for industrial sites. However, before the land could be turned into an industrial park, various buildings on the land had to be demolished, including the large Armour packing plant and various livestock pens.

In formulating specifications for the industrial park, and specifically for clearing the land after the structures had been demolished, the Daly Company, in cooperation with the Omaha Public Works Department, concluded that foundation and debris should be cleared down to 2 feet below grade but not below that point. After the specifications were established, contracts were let and the work commenced on the creation of the South Omaha Industrial Park which was completed in late 1973.

Once the park had been completed, the South Omaha Corp. engaged OIF as a broker to assist in the sale of the land. Metro Tech became interested in acquiring some of the land for the development of its campus. The land sale was negotiated primarily between the president of Metro Tech, Dr. Marm Harris, and the executive director of OIF, Richard Sorenson. Harris maintains that, during the negotiations, Sorenson represented to Harris that the prior building structures on the premises had been demolished and dug up; that the debris had been removed; and that the land was fully developed, ready to build on and suitable for Metro Tech campuses. Sorenson admitted that he advised Harris that, "The buildings are now torn down, the site has been readied for con-

struction and it is available for sale." The land was purchased by Metro Tech.

When Metro Tech began construction, it discovered that the site would not support building foundations because of the condition of the soil below the surface. Beginning only 2 feet below ground level were found building remnants, subterranean rooms, tunnels, drains, layers of brick and mortar, broken concrete, and miscellaneous decomposable materials which had not been either completely demolished or removed. As a result, Metro Tech had to spend over $95,000 to remove the debris and other material and to fill and compact the earth before it constructed the first two campus buildings on the site.

Metro Tech filed suit against OIF and South Omaha Corp. maintaining that, by reason of false representations and concealment of the fact that the land was not ready to be built upon, Metro Tech suffered damage. A second cause of action sought damages for an alleged breach of express and implied warranties. OIF then filed its motion for summary judgment which was sustained by the District Court.

It appears that the central question is whether a representation that the land is "fully developed industrial land, suitable for industrial buildings and development, and ready to build on" meant that all of the buildings previously located on the site had been demolished, all of the debris removed, the soil compacted and made ready to accept foundations, as contended by Metro Tech, or whether that statement simply meant that the land was not agricultural land, had been leveled, had utilities to its site, and would accommodate future construction, as contended by OIF.

As we indicated at the outset, we need not resolve how that issue should be decided. All we need determine is whether there was, indeed, a genuine issue of material fact. In *McDowell v. Rural Water Dist. No. 2,* 204 Neb. 401, 410, 282 N.W.2d 594, 599 (1979), we

said, "The rules relating to the issuance of summary judgments have often been considered and are well settled in this jurisdiction. . . . 'The moving party is not entitled to summary judgment except where there exists no genuine issue as to any material fact in the case and where under the facts he is entitled to judgment as a matter of law.'" The issue on a motion for summary judgment is whether or not there is a genuine issue as to any material fact and not how that issue should be determined. In considering such a motion, the trial court must take that view of the evidence most favorable to the party against whom the summary judgment is directed, giving to that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. *Valentine Production Credit Assn. v. Spencer Foods, Inc.*, 196 Neb. 119, 241 N.W.2d 541 (1976); *Farmland Service Coop, Inc. v. Klein*, 196 Neb. 538, 244 N.W.2d 86 (1976). This court has stated that summary judgment is not appropriate, even where there are no conflicting evidentiary facts, if the ultimate inferences to be drawn from those facts are not clear. *Barnes v. Milligan*, 196 Neb. 50, 241 N.W.2d 508 (1976); *Fisher v. Stuckey*, 201 Neb. 439, 267 N.W.2d 768 (1978). Likewise, we have stated that summary judgment should not be used to deprive a litigant of a formal trial if there is a genuine issue of fact. *Miller v. Aitken*, 160 Neb. 97, 69 N.W.2d 290 (1955).

There appears to be no conflict as to what was said. The conflict is over the meaning of what was said. Unless we can say that, as a matter of law, "fully developed" or "ready to build on" meant that the land was cleared and leveled, equipped with adequate utilities, provided with paved roads, and served by access to numerous transportation facilities, as contended by the appellee, then the granting of the motion for summary judgment was premature. No case is cited to us, nor are we able to discover any case in which it has been determined that the words involved herein have a clear and recognized meaning.

The record at this time can support at least two reasonable inferences. One is the position taken by OIF to the effect that no inference could be drawn concerning the ground below the surface; that what was meant was that the site was no longer farmland, but had utilities and was ready for further development. Another reasonable inference, as suggested by Metro Tech, is that the statement meant that all the debris had been removed and a building could be constructed without additional site preparation cost. When undisputed facts require the exercise of reason and judgment so that one reasonable mind may infer that a controlling fact exists and another that it does not exist, there is a question of fact. *Hirsch v. Jones*, 191 N.Y. 195, 83 N.E. 786 (1908). In reviewing motions for a directed verdict, a similar situation to what is here involved, we have frequently said that, where different minds may draw different conclusions from the evidence or there is a conflict in the evidence, the matter at issue must be submitted to the jury. *Boardman v. McNeff*, 177 Neb. 534, 129 N.W.2d 457 (1964); *Crusinberry v. Merryman*, 176 Neb. 479, 126 N.W.2d 481 (1964); *Hancock v. Parks*, 172 Neb. 442, 110 N.W.2d 69 (1961).

If, indeed, the words admittedly used by OIF to Metro Tech have an accepted meaning in the building industry, the record does not so indicate, and a question of fact, therefore, exists. Likewise, if the words have no recognized meaning in the industry, then, indeed, what OIF intended the words to mean and what Metro Tech should have reasonably understood the words to mean raises a genuine issue of fact as to a material issue. In either event, the record, at this time, is insufficient to sustain a motion for summary judgment. For that reason, the decision of the District Court in sustaining OIF's motion for summary judgment is reversed and remanded for proceedings in accordance with this opinion.

REVERSED AND REMANDED.

HUBER, District Judge, concurring.

I agree with the foregoing opinion. However, may I point out that a decision sustaining a motion for a directed verdict may be of questionable precedent in ruling on a motion for a summary judgment. In ruling on a motion for a summary judgment, the precise question is whether a genuine issue of material fact exists. In ruling on a motion for a directed verdict, the precise question is whether reasonable minds could differ on the genuine issue or issues of material fact or facts. Thus, on a motion for summary judgment, all we have to do is decide if the issue exists, without deciding it, but on a motion for a directed verdict, we do decide such issue or issues to the extent of whether or not reasonable minds might differ with respect to such issue or issues.